## MATILDA M. PATTERSON *et al.*

*v.*

## JOHN W. McKINNEY *et al.*

*Filed at Ottawa November 20, 1880.*

1. FRAUDULENT CONVEYANCE—*voluntary settlement.* A voluntary conveyance to a wife or child when the donor is in embarrassed financial circumstances, is fraudulent as to pre-existing creditors, even though the party retains estate nominally in value equal or more than equal to all his indebtedness, when the event shows that the property retained is in fact not sufficient to discharge all his liabilities. In the case of a child, the conveyance or settlement must be a reasonable one, depending on the ability of the debtor at the time to withdraw the amount of the donation from his estate without the least hazard to his creditors, or in any material degree lessening their prospect of payment.

2. A person in 1870 made a parol gift of 100 acres of land to his son, who was blind, and married the same year and moved upon the premises, and occupied and controlled the same ever after, making valuable improvements thereon to the amount of $2000, and paying all the taxes thereon. It appeared that the father at the time of the gift was in prosperous circumstances, and worth $50,000 clear of all indebtedness, and in nowise embarrassed, but when he executed the gift by making a deed to the son, was embarrassed and in failing circumstances, and soon after became insolvent. It was *held,* that the conveyance to the son in pursuance of the parol agreement, should relate back to the time of the parol gift, and, under the circumstances, was not fraudulent as to creditors of the father.

3. CHANCERY—*affirmative relief on answer.* Several judgment creditors filed their bills to set aside a conveyance of land by their debtor as fraudulent, and other judgment creditors, not parties to the bills, levied their executions upon the land, and the grantee filed a bill to restrain the creditors from selling the same under their executions, and one creditor filed a cross-bill, all of which bills were consolidated and heard together on bills and

97   41
24a 221
26a 347

97   41
124  109
124  111

97   41
38a 146

97   41
147 545

97   41
162 631

97     41
196  1  28

answers, etc., making an issue whether the conveyance was fraudulent or not, and the court set aside the conveyance so far as the several creditors were concerned, holding that the land was liable to the liens of the several judgments: *Held*, that the decree was not obnoxious to the objection it gave affirmative relief to the creditors not joining in the bill to set aside the conveyance, and that the grantee had no substantial ground of complaint in this respect.

4. SAME—*decree in setting aside fraudulent conveyance.* On setting aside a voluntary conveyance as in fraud of creditors, the decree should be an alternative one as to the grantee, that if the judgments are not paid by the time limited, the lands shall be sold, giving the grantee an option to pay the debts. It should not be a personal decree against the grantee.

APPEAL from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding.

Mr. L. DOUGLASS, for the appellants:

The proof shows that the debtor, in 1870, gave his son, William S. Patterson, 100 acres of land; that he took possession on the faith of the gift, and made lasting and valuable improvements on it, and that there was a good consideration for the premises. The donor then was in prosperous circumstances. In such a case the gift, though afterwards executed, will be upheld. *Kurtz et al.* v. *Hibner et al.* 55 Ill. 521; *Bright* v. *Bright*, 41 id. 97; *Shepard* v. *Bevin*, 9 Gill, 32; *King's Heirs* v. *Thompson*, 9 Pet. 204; *Wood et al.* v. *Thornley et al.* 58 Ill. 468; *Sweeney* v. *Damron*, 47 id. 451; *Bridgford* v. *Riddell*, 55 id. 263; *Hatch* v. *Jordan*, 74 id. 414.

In order to maintain the bill complainants must prove that the defendant was insolvent, or such facts and circumstances as would show his insolvency at the time of the gifts. *Moritz* v. *Hoffman*, 35 Ill. 553.

That a voluntary conveyance of land to a wife or son is not fraudulent, if the donor retained sufficient to pay his debts, and that proof of indebtedness at the time is not sufficient to impeach the same, reference was made to the following cases: *Bridgford* v. *Riddell*, 55 Ill. 263, *Gridley* v. *Watson*, 53 id. 193, *Patrick* v. *Patrick*, 77 id. 561, *Van Wyck* v. *Seward et al.* 6 Paige 62, *Brackett* v. *Wait*, 4 Vt. 389,

*Harvard* v. *Williams,* 1 Bailey, 575, *Pike et al.* v. *Mills,* 23 Wis. 164, *Bay et al.* v. *Cook,* 31 Ill. 345.

Messrs. PEPPER & WILSON, for the appellees:

Even in the absence of any fraudulent intent, if the grantor, at the time of making a voluntary conveyance to his wife or child, was considerably indebted and embarrassed, or on the eve of bankruptcy, or if the value of the gift be unreasonable,—disproportioned to his property, and leaving a scanty provision for the payment of his debts, then the conveyance will be void as to creditors. *Salmon* v. *Bennett,* 1 Conn. 515; *Reed* v. *Livingston,* 3 Johns. Ch. 481; *Choteau* v. *Jones,* 11 Ill. 300; *Herschfeldt* v. *Gerry,* 6 Mich. 456; *Parkman* v. *Welch et al.* 19 Pick. 231; *Henderson* v. *Longworth,* 11 Wheat. 199; *Carpenter* v. *Roe et al.* 10 N. Y. 227; *Sweeney et al.* v. *Damron et al.* 47 Ill. 450; *Emerson* v. *Bemis et. al.* 69 id. 537; *Kipp* v. *Hanna,* 2 Bland, 33.

As to the parol gift in 1870 to the debtor's son, and its binding effect, counsel cite 1 Pars. Cont. ch. 15, Fry on Spec, Perf. 64, and note 19, *Reed* v. *Livingston,* 3 Johns. 481, *Freeman* v. *Freeman,* 43 N. Y. 34, *Taylor et al.* v. *Staples. et al.* 8 R. I. 179, *Hardesty* v. *Richardson,* 44 Md. 617, *Bright* v. *Bright,* 41 Ill. 96, *Kurtz* v. *Hibner,* 55 id. 515, *Wood et al.* v. *Thornley et al.* 58 Ill. 464, *Walton* v. *Walton,* 70 id. 142, *Wadhams et al.* v. *Gay,* 73 id. 415, *Hoig et al.* v. *Adrian College et al.* 83 id. 267.

Messrs. WILLIAMS & LAWRENCE, for appellee Faulkner:

By these voluntary transfers the debtor deliberately removed the substantial foundations of his business credit, intending to provide for his family at the expense of his creditors, at a time when he was heavily indebted, and a downward turn in the market was at any time liable to prevent the possibility of paying, or, at least, seriously endanger the payment of his creditors. This he could not lawfully do. *Beaumont* v. *Thorp,* 1 Ves. Sr. 27; 2 Ves. Sr. 1 to 10;

*Taylor* v. *Jones,* 2 Atkins, 603; *Townsend* v. *Westicott,* 2 Beav. 345; affirmed in 4 Beav. 58; *Townsend* v. *Windham,* 2 Ves. Sr. 1; *Crossly* v. *Elworthy,* 12 Eq. 158, cited 3 Moak, 704; *Parish* v. *Murphee,* 13 How. 99; *Kerr* v. *Smith,* 20 Wall. 31; *Sexton* v. *Wheaton,* 8 Wheat. 229; *Stileman* v. *Ashdoun,* 2 Atk. 480; *Smith* v. *Vodges,* 2 Otto, 183; *Swartz* v. *Hazlett,* 8 Cal. 118; *Paulk* v. *Cook,* 39 Conn. 571; *Salmon* v. *Bennett,* 1 Conn. 525; *Parkman* v. *Welch,* 19 Pick. 235; *Blake* v. *Sawin,* 92 Mass. 342; *Brackett* v. *Wait,* 4 Vt. 397; *Church* v. *Chapin,* 35 id. 229; *Hanson* v. *Buckner,* 4 Dana, 255; *Lowry* v. *Fisher,* 2 Bush, 76; *Bullett* v. *Worthington,* 3 Md. Ch. 101; *Warner* v. *Dove,* 33 Md. 587; *Hunter* v. *Wait,* 3 Gratt. 48; *Wilson* v. *Buchanan,* 7 id. 340; *Chamberlain* v. *Temple,* 2 Randolph, 399; *Churchill* v. *Wells,* 7 Tenn. 370; *Blakemy* v. *Kirkley,* 2 Nott & McCord, 546; *Iley* v. *Niswanger,* 1 McCord, 520; *Izzard* v. *Izzard,* 1 Burleigh Eq. 236; *Richardson* v. *Rhodes,* 14 Rich. 100; *O'Donnell* v. *Crawford,* 4 Dev. 201; *Lane* v. *Kingsbury,* 11 Mo. 410; *Potter* v. *McDowell,* 31 id. 69; *Eddy* v. *Baldwin,* 32 id. 374; *Potter* v. *Carey,* 57 id. 119; *Ex parte McClenachan,* 2 Yates, 508; *Thompson* v. *Dougherty,* 12 S. & R. 455; *Choteau* v. *Jones,* 11 Ill. 318; *Bay* v. *Cook,* 31 id. 345; *Boies* v. *Henry,* 32 id. 130; *Mixell* v. *Lutz,* 34 id. 382; *Hitt* v. *Ormsbie,* 12 id. 166; *Farnsworth* v. *Strapler,* id. 492; *Ward* v. *Enders,* 29 id. 579; *Monell* v. *Sherrick,* 54 id. 263; *Moritz* v. *Hoffman,* 35 id. 558; *Sweeney* v. *Damron,* 47 id. 458; *Gridley* v. *Watson,* 53 id. 192; *Bridgford* v. *Riddell,* 55 id. 272; *Pratt* v. *Myers,* 56 id. 23; *Mitchell* v. *Brynes,* 67 id. 524; *Woodbridge* v. *Gage,* 68 id. 157; *Emerson* v. *Bemis,* 69 id. 540; *Hatch* v. *Jordan,* 74 id. 414; *Phillip* v. *North,* 77 id. 243; *Patrick* v. *Patrick,* id. 561 *Bougard* v. *Block,* 81 id. 186; 1 Am. Lead. Cases, 35, 39, 40; Story's Eq. J. 362, 363; Kerr on Fraud, 207; Bump on F. C. 278; Willard's Eq. 237; Wash. R. E. 633.

Mr. B. C. TALIAFERRO, for the appellees Farmers' National Bank and William Drury.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The question here arising respects the validity of two certain conveyances of lands in Knox county, in this State, made by William S. Patterson on May 5, 1876; the one being to his son, William E. Patterson, of 100 acres off from the north side of north-west quarter section 18, township 12 north, range 2 east; the other being to one Babcock, in trust for Matilda M. Patterson, the wife of William S. Patterson, of the north-east quarter section 18, township 12 north, range 2 east, and the south-east quarter section 7, township 12 north, range 2 east,—Babcock subsequently conveying the last named lands to Matilda M. Patterson. The conveyances are impeached by antecedent creditors who, after the conveyances, had obtained judgments against William S. Patterson upon debts against him, existing at the time of the conveyances, and had levied their executions issued upon the judgments, on these lands.

The conveyances were voluntary. The general circumstances attending and following the making of them, appear as follows:

At and before the time of the making of these voluntary conveyances, William S. Patterson was a large farmer and stock dealer, in the occupancy and management, as his farm, of the lands in controversy, or at least that portion of them he conveyed to his wife, and they were unincumbered.

At that time he was largely indebted to different persons for stock purchased and money borrowed of them for use in his business, being over $50,000, on which he was paying ten per cent interest.

For some time previously, he had been doing business as a member of the firm of Patterson & Rogers. The judgments of the five judgment creditors concerned in the present suit, amounting to some $16,000, were all, except one, for $2914, upon indebtedness owing by the firm of Patterson & Rogers.

It appeared that Rogers had not, since 1875, any property out of which any of said indebtedness could be made.

William S. Patterson testifies that in March, 1876, "I had been surprised, so far as Mr. Rogers' affairs were concerned. I knew just what my own affairs were all the time. I had not been making anything for a time. I was kinder fighting along. We hadn't heavy losses. Sometimes we would make and sometimes lose."

On May 6, 1876, these two conveyances to the wife and son were made. Mrs. Patterson says the land was worth from $60 to $70 per acre. Calling it $60, would make the value of the 320 acres conveyed to her $19,200. Almost all the real estate of William S. Patterson, except the land in controversy, was heavily incumbered, to the amount, nearly, of its value.

According to his testimony, after making the gift of this land to his wife, he became her tenant of the farm for that year at the rent of $600, and for 1877 and 1878 he was her hired hand in the management of the farm, she paying him $500 per year for his services, and the use of his stock and farm machinery.

The suits in which were recovered the five judgments involved in this case, were commenced as follows: Two on June 7, 1876, one on July 25, one on July 27, 1876, and one on January 24, 1877; the judgments being recovered, two on December 4, 1877, one on March 5, 1877, one on April 7, and one on April 23, 1877. In the two suits first commenced, on June 7, 1876, attachments in aid of the suits were sued out on August 10, and on August 11, 1876, and levied on the lands in controversy.

On an execution issued upon the judgment for $2914, recovered March 5, 1877, there was made, on June 18, 1877, the sum of $1557.50 by the sale of personal property, and the execution was returned unsatisfied as to the residue, and on a subsequent execution issued on the judgment, $579.10

was made June 9, 1879. This is all that appears to have been made upon the judgments.

In giving his testimony, William S. Patterson made a written exhibit of his indebtedness on May 5, 1876, the time of making the conveyances, showing his total indebtedness at that date to be $53,088.21. He also made an exhibit of his property at that time, which remained after the making of the conveyances, showing its value to be $79,860.31.

As regards the conveyance to the wife, Matilda M. Patterson, it was very clearly fraudulent and void, as against creditors.

It is insisted by appellants' counsel that because the property remaining in the debtor's hands after the making of the conveyance exceeded, in nominal value, the total amount of his indebtedness, the conveyance should be upheld. Such is claimed as being the doctrine of this court, citing, as in support of the claim, an expression in the opinion of the court in *Moritz* v. *Hoffman et al.* 35 Ill. 561, " that mere indebtedness at the time is not sufficient (to impeach a voluntary settlement,) if the maker of the settlement retains sufficient property with which to discharge his debts;" and one in *Gridley* v. *Watson*, 53 Ill. 193, that "he (the debtor) had a right to provide a home for his wife and children, leaving property sufficient to satisfy his creditors,"—referring to *Moritz* v. *Hoffman*.

Taken by themselves, these expressions might seem to lend countenance to the idea that a voluntary conveyance would be valid whenever there was property remaining whose valuation, at the time, equaled the amount of all indebtedness.

But a single expression selected from an opinion is not always to be solely relied on, as showing what was the true decision, but the tenor of the whole opinion is to be regarded.

As one of the authorities upon which the decision in *Moritz* v. *Hoffman* was founded, there was cited *Hindes, Lessee,* v. *Longworth*, 11 Wheat. 213, where it was said: "But the mere fact of being in debt to a small amount would not make the

deed fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift to the child was a reasonable provision according to the state and condition in life, and leaving enough for the payment of the debts of the grantor."

In the course of the opinion in *Moritz* v. *Hoffman,* it was also said: "Some courts in this country have held that subsequent creditors might impeach a settlement on the ground of prior indebtedness, if they could show antecedent debts sufficient in amount to afford reasonable evidence of a fraudulent intent; they are not obliged to show the absolute insolvency of the person making the settlement. It is enough to show him deeply indebted (citing, among authorities, *Parkman* v. *Welch,* 19 Pick. 231.) This would seem to be the most reasonable doctrine, and, tested by this, there is nothing in this case to show the person making the settlement was deeply indebted."

In *Parkman* v. *Welch,* cited as above, it was said: "All that is necessary to entitle a creditor to impeach a deed as fraudulent, when made without a valuable consideration, or on a secret trust, is, that the grantor be deeply indebted." Without making further like reference, which might be made, to the opinion, it is quite apparent, taking it all together, that the decision in *Moritz* v. *Hoffman* does not go to the extent that is claimed by appellants' counsel.

In 1 Am. Lead. Cas. (4th ed.) 37, note of Hare & Wallace to the case of *Salmon* v. *Bennett,* upon this subject, after stating it to be the general principle in the courts of this country that as against creditors existing at the time of the conveyance, a voluntary conveyance is fraudulent in law, and void, it is said: "Yet it is subject to the modification established by *Salmon* v. *Bennett,* 1 Conn. 525, that a voluntary conveyance to a child by a father who is not at the time in embarrassed circumstances, if the conveyance be not more than a reasonable provision for the child, considering the grantor's circumstances and position, and if other property be retained

amply sufficient beyond all doubt to pay all the grantor's debts, is not fraudulent; the matter, in the case of a child, being thus made a question of reasonable tendency, and convenient, practicable justice, and depending on the ability of the debtor at the time to withdraw the amount of the donation from his estate without the least probable hazard to his creditors, or in any material degree lessening their then prospect of payment,"—citing to a large extent the authorities which sustain the proposition. See *Patrick* v. *Patrick,* 77 Ill. 556.

In accord with this, was the decision in *Emerson* v. *Bemis,* 69 Ill. 537, and we do not regard as inconsistent therewith the cases of *Moritz* v. *Hoffman, Gridley* v. *Watson,* or *Bay et al.* v. *Cook,* 31 Ill. 336, in which latter case there occurs a similar expression, that "a parent may give to his child so much of his estate as he pleases, provided he retains enough to answer all subsisting demands against himself." That it is not necessary there should be actual insolvency in order to render a voluntary conveyance void, see Bump on Fraud. Conv. 293 *et seq.* and authorities cited.   Whether the property reserved is what will be deemed ample or enough, does not depend entirely on the nominal amount and value.   Regard is to be had to the nature and state of the property, the amount of the liabilities, and whether the effect of the conveyance might not probably be to delay or defeat creditors. *Crossley* v. *Elworthy,* L. R. 12 Eq. Cases, 158, is an authority to the effect that if a person largely indebted makes a voluntary conveyance, and shortly afterwards becomes insolvent, that is enough to set aside the conveyance as fraudulent.

Patterson, at the time of the making of the conveyance, was largely indebted, and shortly afterwards became insolvent. The conveyance directly tended to, and effectually did, impair the rights of creditors.   Although the property remaining in his hands after the conveyance was, in nominal value, more than equal to the amount of his indebtedness, it was not sufficient for the payment of his debts.   The event so proved it. The diligent pursuit of legal remedies, commenced almost

immediately after the making of the deed, resulted in the collection of but an inconsiderable portion of the debts owing to these judgment creditors. There does not appear to have been any reduction of the debtor's property from any unexpected loss which might not reasonably have been calculated upon.

But it is needless to dwell upon the particulars which mark the transaction as fraudulent. It is so palpable on the face of the circumstances that this conveyance, as against creditors, is unsustainable under the principles of the law relating to voluntary conveyances, that the mere statement of the facts of the case is enough. This much as respects the deed to Mrs. Patterson.

But the deed to the son, William E. Patterson, stands on a different footing. Although the deed was made to William E. Patterson on May 5, 1876, it appears from the evidence that his father made a parol gift of the land to him in October, 1870; that he got married that fall, and moved on the land in November, 1870, and has ever since lived upon it—controlling, managing, and making improvements on it as his own, and has enjoyed, for his own exclusive use, all the proceeds from the land. He was blind, and his father appears to have done some business for him; he paid taxes on the land; but all taxes so paid were refunded to the father by William E. The improvements made on the place by William E. are testified to as being about $2000 in value.

The uncontradicted testimony of William S. Patterson is, that in the fall of 1870, at the time he gave this land to William E., he considered himself worth $50,000 clear of all indebtedness; that he could have paid all he owed any day; that he was not in any way embarrassed, and always paid on demand; and that there is no debt now existing against him that existed then.

We can have no doubt from the evidence, that the land really was given to William E. by parol in October, 1870, and that he thereupon moved on it and has ever since occupied,

cultivated and improved it as his own; that it has so been considered and treated by both his father and himself. It is objected that William E. could have originally had no means except what he derived from his father, and that the improvements made on the place did not exceed in value that of the use and occupation of the land. We do not see that this would matter if there was a parol gift of the land really made, as we think there was.

We are inclined to hold that in the circumstances and situation of William S. Patterson in 1870, this gift then made to his son should be sustained as against creditors, as not being at that time an unreasonable provision for the son, and not having any direct tendency to impair the rights of creditors; and that the deed made to the son on May 5, 1876, should, so far as affects this case, have relation back to the time of the making of the gift, and be treated as if then made.

Objection is made by appellants to the form of the decree as respects two of the judgment creditors—the Farmers' National Bank, of Keithsburg, and William Drury—that it gives them affirmative relief. They did not file bills to set aside these conveyances, but McKinney, Gilmore & Co., and Samuel Sprowl did, as did also Faulkner, his being a cross-bill. Pending the suit upon said bills and cross-bill, the bank and Drury, having judgments in attachment against the lands in controversy, the attachments having been levied prior to filing such bills, caused executions to be issued thereon and advertised to sell the lands on the executions. Whereupon appellants, Matilda M. and William E. Patterson, filed their separate bills in chancery to enjoin such sale. Anwers were filed, issues joined, and by agreement all the suits were consolidated and tried as one cause.

It is urged that as respects the bank and Drury, the court should have decreed nothing more than that the bills against them should be dismissed and the injunctions which had been obtained be dissolved; whereas it was decreed generally that the conveyances be set aside and for nothing held as far as the

creditors in the proceedings were concerned, and that the lands be held liable to the liens of the judgments, etc. The issues made by the bills and answers were whether the lands were fraudulently conveyed or not, and whether the attachments were wrongfully levied upon the lands as the property of appellants. We do not perceive why the setting aside of the deeds is not consistent with the issues made by the bills and answers, and do not think it affords any substantial ground of complaint on the part of appellants.

It is further objected to the form of the decree, that it is personal against the defendants, requiring them to pay the judgments within twenty days. As the cause will be remanded, this objection can be obviated by making the decree an alternative one in this respect, that if the judgments are not paid by the time limited, then the sheriff shall proceed as directed, giving the option to the defendants to pay the judgments or suffer the lands to be sold under execution.

As respects the conveyance to Matilda M. Patterson, the decree is affirmed, but as respects the conveyance to William E. Patterson, the decree is reversed, and the cause is remanded for further proceedings in conformity with this opinion.

*Decree reversed in part and affirmed in part.*