## Mary A. Marmon

### v.

## Thomas F. Harwood et al.

*Creditors' Bill—Voluntary Conveyance—Fraud—Ignorance of Grantee —Property Retained—Subsequent Loss—Delay—Trust—Form of Decree —Subrogation.*

1. Where a conveyance is sought to be set aside as fraudulent because voluntary, it is not necessary to show that the grantee knowingly participated in the fraud, or had notice of the indebtedness of the grantor, or of the insufficiency or misapplication of the property retained.

2. The question whether a voluntary conveyance is fraudulent in law as to creditors of the grantor, depends upon what he retains with which to meet his indebtedness. It is only when the debtor has retained property clearly ample and available that its subsequent loss by means that were not to be anticipated can be considered.

3. Upon a creditors' bill to set aside certain conveyances and subject the property conveyed to the payment of a judgment, it · is *held:* That it was unnecessary to charge or prove actual fraud; that the debtor had no more right to delay the collection of the debt in question than to prevent its collection altogether; that no trust was created for the payment of the complainant's debt; and that the decree sufficiently protects the rights of the appellant.

### [Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Messrs. JAMES S. EWING and HAMILTON SPENCER, for appellant.

The decree appealed from is erroneous, because it directs the property conveyed to Mrs. Marmon to be sold on the Harwood judgment, and is not in the alternative that, if the judgment is not paid by Mrs. Marmon, then the property shall be sold. Patterson et al. v. McKinney, 97 Ill. 41.

The conveyance of Mrs. Paist to Mrs. Marmon was not fraudulent as against creditors. She retained property abundantly sufficient to pay all her debts. There is nowhere in the record, neither in the bill nor in the proofs, any suggestion even, that Mrs. Marmon was party to any alleged fraud. She had no knowledge of any debt owing by her mother, Mrs. Paist.

To subject lands to the payment of debt because of a fraudulent conveyance, it must appear that the grantee had notice of the fraud. Kyzer v. Hull Skirt Co., 34 Ind. 249. A voluntary deed made by a parent to a child without valuable consideration will be upheld, if at the time of the conveyance the grantor retains property reasonably sufficient to pay his debts. Durand v. Weightman, 108 Ill. 489; Woolbridge v. Gay, 68 Ill. 157; Bridgeford v. Riddell, 55 Ill. 261; Moritz v. Hoffman, 35 Ill. 553; Ward v. Enders, 29 Ill. 519; Tunison v. Chamblin, 88 Ill. 378; Pratt v. Myres, 56 Ill. 23; Jackson v. Miner, 101 Ill. 550. These cases refer mainly to the rights of subsequent creditors as against a voluntary conveyance.

As to the validity of a voluntary conveyance as to prior creditors, it must be affirmatively shown that the grantor was insolvent, or at least, deeply indebted, at the time of making such conveyance. Gudgel v. Kitterman, 108 Ill. 50; Moritz v. Hoffman, 35 Ill. 553; Patrick v. Patrick, 77 Ill. 555; Bridgeford v. Riddell, 55 Ill. 261; Gridley v. Watson, 53 Ill. 186; Tunison v. Chamblin, 88 Ill. 378; Pratt v. Myres, 56 Ill. 23; Emmerson v. Bemis, 69 Ill. 537; Crawford v. Logan, 97 Ill. 396; Kehr v. Smith, 20 Wall. 31; Story's Eq. Jur., Sec. 1041; Bump on Fraud. Conv., 282, 287.

Messrs. Kerrick, Lucas & Spencer, for appellees.

Pleasants, J.   This was a creditor's bill by appellees, filed August 11, 1886, against appellant, Wm. W. Marmon, her husband, Maria Paist, Owen L. Cheney, Mary L., his wife, and James S. Neville, to set aside certain conveyances by Mrs. Paist to appellant and Mrs. Cheney respectively, and subject the property therein described to the payment of their judgment against the grantor.

Upon final hearing on the pleadings and proofs a decree was entered substantially according to the prayer of the bill, from which Mrs. Marmon alone appealed.

There is no disagreement as to the main facts, which are as follows: In April, 1884, Mrs. Paist, who was a widow, and the mother of Mrs. Marmon and Owen L. Cheney, made a promissory note, with the latter as surety, for $3,556, due in two years, with interest at seven per cent.   In April, 1886, only a few days after its maturity, appellees, as assignees of said note, recovered judgment thereon against the makers for $4,053.84 and costs, on which execution was duly issued and returned "no property found."   Therefore this bill was filed.

When said note was made Mrs. Paist had title in fee to the following described parcels of real estate, viz. : Lot sixteen (16) and the east half of lot seventeen (17) in White's Addition to Bloomington, known as the homestead; the south half of lot nineteen (19) in the same addition, known as the Cheney

homestead; lot six (6) of the Assessor's Subdivision of lots 50, 51, 52, 53 and 54, of the original town of Bloomington, known as the Hammerslaugh property; and the east half of lot four (4) in block (1) of the Third Addition to Normal, and a strip of land adjoining.

On the 5th day of November, 1884, she executed to appellant a conveyance in fee of the homestead, without consideration, and on the same day to Mrs. Cheney, also without consideration, a like conveyance of the Cheney homestead and the Hammerslaugh property, and on the 10th of December following, the half lot and strip adjoining in Normal.

The homestead was unincumbered, and of the value of about $7,000; the Cheney homestead was worth about $2,500, but incumbered for $1,000; the Hammerslaugh property was subject to a mortgage on which, with accrued interest, there was owing about $8,000, and was sold by Mrs. Cheney, subject to the mortgage, for $4,438; and the Normal lots were worth $300.

Thus, by these conveyances, executed after the making of the note mentioned and before it became due, Mrs. Paist attempted to divest herself, without consideration, of all the property she had that could be reached by execution, and which amounted in value to over $13,000. Besides that note, she was liable as surety for her son on another for $1,000, to these appellees.

All the property that she retained consisted of notes of her son-in-law, Mr. Marmon, for $2,800, and a mortgage on the fair grounds at Bloomington for $6,000, subject to a prior incumbrance of about $12,000.

Before the note first above mentioned matured, the Marmon notes belonging to her were reduced to one for $1,300 ($1,000 having been used to pay the smaller note to appellees, and $500 given to another party), and this did not mature until 1890 or 1891.

The fair grounds were sold under the prior mortgage or trust deed, and Mrs. Paist became the purchaser for the amount due thereon, securing to the creditors $7,000 of the purchase money by her mortgage on the property and paying

$5,000 in cash. Of this $5,000 she got $4,000 of the proceeds of the sale by Mrs. Cheney of the Hammerslaugh building and borrowed $1,000. She then sold the property to the Mc-Lean County Coal Company, for which it assumed the $7,000 mortgage and paid her $2,000 in cash, $3,000 in notes and $2,500 in two houses and lots in Normal. Out of the cash she repaid the $1,000 borrowed to pay for the property, and the residence, with the notes and real estate, was put under control of Owen L. Cheney, who sold the realty for $1,900, converted the notes, and lost the whole in deals on the Chicago Board of Trade. He is insolvent.

The $1,300 note of Marmon, all that remained to Mrs. Paist, was delivered by her to her solicitors to secure their fees for services in this and other litigation.

It appears that when Mrs. Paist conveyed the Hammerslaugh building to Mrs. Cheney, it was intended by both parties that it should be sold again, and the proceeds in excess of the mortgage upon it, applied to pay the note held by appellees, and that the change of purpose, by which it was applied to pay for the fair grounds, was not known to Mrs. Marmon until after it had been so applied.

And it further appears that when the proceeds of the sale of the fair grounds by Mrs. Paist were placed under the control of Owen L. Cheney, he was expressly charged by her and expressly agreed to apply so much as should be required therefor to pay off that note, and his conversion of them, as stated, was without the consent of his mother, or the knowledge of her or of Mrs. Marmon, until after its conversion and loss, all of which occurred before appellees' note became due. She also proposed to appellee Thomas F. Harwood, to take the fair grounds for $16,000, including in that price the mortgage and the amount of appellees' note, which he declined to do.

The arrangements so made and proposed for the payment of this note may be accepted as proof that Mrs. Paist did not intend, by the conveyances in question, to hinder, delay or defraud appellees, nor apprehend from then any such effect.

But it was unnecessary to charge or prove actual fraud.

The contention of appellees is that in view of the amount of her indebtedness, about $5,000, and the character of the property she retained, being $2,300 in unsecured notes not due until 1891, and a mortgage for $6,000 against an insolvent corporation upon property of uncertain value and under a prior incumbrance of $12,000, Mrs. Paist had no right as against her creditors, however innocent of actual fraud, to donate to her daughter real estate of the value of $7,000.

It was clear that the Marmon note was not available for immediate application to their payment when their debt became due, at their option, through any process of law or equity. A delay of nearly five years was inevitable in the natural course of events. Possibly with her consent it might have been at once converted into money by submitting to a considerab'e rebate or discount. But the fact that the creditors could not compel its conversion or application for so long a time makes it of little if any account in the view of the equity rule here invoked; for she had no more right to delay them in the collection of their debt than to prevent them altogether. And that her mortgage upon the fair grounds was, at the date of the conveyance to appellant, sufficient to pay them, is by no means clear. The prior incumbrance then amounted to about $12,000, and the property was eventually sold to the parties to whom it was most valuable for less than the aggregate amount of that incumbrance and appellees' debt.

It is true that in the interval of time between the date of that conveyance and the maturity of appellees' debt, she acquired a larger interest in it, but the question of her right to convey without consideration is to be determined by what she then retained. If she could take the chance of increasing her property after that time she must also take the risk of its decrease. By her management she did increase it during that time, but by her management also, though well intended, she afterward, during the same period, lost it all; and when the creditors' debt became due they found remaining in her hands nothing of the property she had when the credit was given, which, if retained, could have been made to respond to their claim. She had voluntarily conveyed every item of it. If it

be said that the means by which she lost the proceeds of her estate in the fair grounds were not to be anticipated, it may be also said that the means by which she added to it and the fact of such addition were not to be anticipated; in other words, that the question goes back of both the gain and the loss, to the time of the voluntary conveyance. The inquiry is, what did she then retain; and it is only when the debtor has retained what is clearly ample and available to the creditor, that its subsequent loss by means that were not to be anticipated is considered.

The claim that when the deed was made to appellant a trust was created for the payment of appellees out of the proceeds of the Hammerslaugh building which was at the same time conveyed to Mrs. Cheney, is not sustained by the evidence. The deed to her was absolute, and whatever may have been the intention, no valid enforceable trust for that purpose was ever created unless it was by her agreement on receipt of those proceeds, which of course was some time afterward.

Without extending the argument to all the suggestions of counsel, the foregoing is submitted as a sufficient indication of the views on which the court reached the conclusion that the conveyance to appellant was within the rule declared in Patterson v. McKinney, 97 Ill. 41, fraudulent in law as against appellees, upon the assumption that it was voluntary, which we further think is fairly warranted by the evidence. The testimony does not show any such definite parol agreement with appellant, nor any such apparent change of possession or improvement of the premises on the faith of it, as would establish the equity claimed for her on that ground.

Where a conveyance is sought to be set aside as fraudulent because voluntary, it is not necessary to show that the grantee knowingly participated in the fraud, or had notice of the indebtedness of the grantor or of the insufficiency or misapplication of what was retained. In the single case cited from 34 Ind. 249, the conveyance was made for a valuable consideration, and we understand the rule of notice here contended for applies only to grantees for value. Appellant, then, is not protected by her ignorance.

We are also of opinion that the contingent provisions of the decree sufficiently obviate the objection taken to its form. They give her the right to pay the amount found due, and in case she pays it or any part of it, or in case the lot conveyed to her or any part of it shall be sold to satisfy it, she is subrogated to complainant's rights against Owen L. Cheney, who is held primarily liable.

Perceiving no material error in the record the decree will be affirmed.

*Decree affirmed.*