J. H. ALSDURF, Trustee, *v.* MARTHA WILLIAMS *et al.*

and

DAVID EVANS *v.* SAME.

*Opinion filed April 16, 1902.*

1. APPEALS AND ERRORS—*when freehold is involved in attachment suit.* If the property attached in aid of an action of debt is real estate, and a third person intervenes and denies the title of the defendant and claims the land adversely, the title to the land is directly put in issue and a freehold is involved in the decision.

2. HUSBAND AND WIFE—*if property belongs to wife the increase of the investment is hers.* While a wife cannot hold property of her husband to hinder his creditors, yet if the property belongs to the wife it cannot be taken for the debts of the husband, and all the increase and legitimate outgrowth of the investment are as absolutely hers as the original capital.

3. SAME—*products of wife's farm not liable for husband's debts because he works on farm.* If husband and wife live together on the wife's farm and he contributes personal labor only, such as is consistent with the common interest and the proper enjoyment of the property, the products will not belong to him nor be liable for his debts.

4. SAME—*fact that husband works on wife's farm does not enable his creditors to seize it.* If the wife purchases property with money obtained from another source than her husband she will be protected in its possession and ownership, and the fact the husband lives in the family and does work on the place does not enable his creditors to seize the farm for his debts.

APPEAL from the Circuit Court of LaSalle county; the Hon. GEORGE W. BROWN, Judge, presiding.

CORNELIUS REARDON, for appellant J. H. Alsdurf.

O. S. HAGEN, for David Evans.

DUNCAN MCDOUGALL, (FOWLER BROS., and MCDOU-GALL & CHAPMAN, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On January 24, 1901, David Evans commenced an action of debt in the circuit court of LaSalle county against Andrew Williams on a judgment for $294 rendered in 1882,

and he afterward sued out a writ of attachment in aid of his action. The writ was levied on a farm of $86\frac{60}{100}$ acres in that county and stock and property on the farm. Shortly afterwards the defendant, Andrew Williams, was adjudged a bankrupt on his own petition in the district court of the United States. On March 16, 1901, Martha Williams, wife of the defendant, filed her interpleader under the statute, claiming ownership of the property attached, both real and personal. J. H. Alsdurf, trustee in bankruptcy of the estate of Andrew Williams, also filed his interpleader, denying both the right of the plaintiff and the title of Martha Williams, and asserting title in himself, as trustee in bankruptcy, to the real and personal property attached. Issues were made up and a jury was waived and the issues submitted to the court. Upon a trial the court found the issues, both upon the merits and the attachment, against the plaintiff. The court further found that Martha Williams, the intervener, was the owner of the real and personal property attached and ordered it surrendered to her. The intervening petition of the trustee in bankruptcy was dismissed and the attachment was dissolved and the suit dismissed at the cost of the plaintiff. The trustee in bankruptcy appealed from the judgment dismissing his petition, and he and the plaintiff have assigned errors on the record.

The suit involved the title to real estate and the appeal was taken directly to this court. A plaintiff in attachment seeks only to establish a lien upon the property of the defendant for the amount of his debt and no freehold is involved in the original attachment, but where land is attached as the property of the defendant and a third person intervenes and denies the title of such defendant and claims the land adversely, the title is directly put in issue by the pleadings, and the decision of the case necessarily involves the decision of such issue. A freehold is then involved. *Ducker* v. *Wear & Boogher Dry Goods Co.* 145 Ill. 653.

The intervener, Martha Williams, held the legal title to the property attached and derived it from a source other than her husband, the defendant. No part of the consideration came from him, but it is claimed that some part of it indirectly represented an interest which he had in his father's estate, and that his labor and services had been expended on the property. On these grounds it was insisted that the transaction by which she acquired title was fraudulent, and that as to creditors the property was the property of her husband, the defendant. No ruling of the court is complained of and no error of law is alleged or argued, but the claim made is that the finding and judgment of the court were contrary to the evidence.

The facts proved are, in substance, as follows: Knudt Williams died intestate in May, 1888, and the defendant, Andrew Williams, was one of his children and heirs. He left considerable farm lands, including the farm in question, but he was involved in debt and all his real estate was sold by his administrator to pay debts. Andrew Williams had no property when he was married to Martha Williams in August, 1888, except $75, which he expended on that occasion. After paying the expenses incident to the marriage neither husband nor wife had any property whatever, and Andrew Williams owed various debts, the judgment on which this suit was founded having been rendered against him before that time. The following March he leased of the administrator of his father's estate one hundred and eighty-six acres, including this farm, and he commenced farming with an equipment purchased on credit. In October, 1890, the farm was sold, with the other real estate, to pay debts of the estate. Andrew Williams was then indebted to the administrator in the sum of $746.75, secured by chattel mortgage, and had another debt of $85 secured by chattel mortgage. At the administrator's sale his brother, Joseph Williams, bought the farm. On December 10, 1890, Joseph Williams executed a contract for the sale of the farm to the wife,

Martha Williams, for $3039, payable in three years, with six per cent interest. On that day the widow, Udna Williams, received $2494.81 for her dower, and she then made presents of $500 each to her daughter, Christina, her son Joseph, and her daughter-in-law, Martha Williams, the $500 given to Martha Williams being paid by her on the land. Joseph Williams died before the deed was made, and the title was conveyed to her through a proceeding in court. It is not clear from the evidence just when payments were made, but the entire consideration for the land was paid in the end, in addition to the $500, by Martha Williams mortgaging the land to E. A. and H. A. Lormor for $2000 borrowed money, and a second mortgage to the mother-in-law, Udna Williams, for $791.95 borrowed of her. The mortgage for $2000 was not paid, but remained an encumbrance on the land at the time of the trial. The second mortgage was paid by Martha Williams to the estate of Udna Williams out of a legacy. Udna Williams died December 17, 1897, and by her will gave all her property to her daughter, Christina, her son Joseph and her daughter-in-law, Martha Williams. The share of Martha Williams was $1005, and the interest on the mortgage amounted to $142.55, making the principal and interest $934.50, which was paid out of the legacy, and the balance was paid to Martha Williams in cash. Martha Williams had possession of the farm from the time she bought it, and it was carried on and the business done in her name. The personal property which Andrew Williams had was sold to satisfy the mortgages on it. Andrew Williams and Martha Williams lived together on the farm and raised a family. She did the work in the house and he worked on the place, but his habits were not good for a number of years and he was addicted to the use of intoxicating liquors. The work was done largely by hired men employed and paid by Martha Williams. The farm was tiled and a crib and pole-barn were built, partly with new material and partly with old. At some time Andrew

Williams assigned to his mother his distributive share of his father's estate, amounting to $575.75. The record does not show when this was done, but the mother receipted for it to the administrator October 1, 1892. This is the foundation of the claim that his interest went into the farm. It is argued that this share was assigned to the mother so that she could, and did, give the $500 to Martha Williams; but that does not seem probable, inasmuch as she gave $500 at the same time to each of her other children. There is no necessary connection between the assignment and the payment on the land or the gift to Martha Williams, and it is not shown that they were concurrent. The share of Andrew Williams in his father's estate was paid to his mother, and for what reason does not appear. It was not traced into this land in any way. Joseph Williams was unmarried, and at his death Andrew became an heir, and assigned his interest in that estate to the Lormors to pay a note he had borrowed of them, which had no connection with this land.

A husband cannot rightfully carry on his business in his wife's name under an assumed agency. He can not use his wife's name as a mere device to cover up his property or keep from his creditors the profits of a business which is, in fact, his. A wife cannot hold the property of her husband to delay, hinder or defraud his creditors. (*Robinson* v. *Brems,* 90 Ill. 351; *Lachman* v. *Martin,* 139 id. 450.) But if the property belongs to the wife it cannot be taken for the debts of the husband, and all the increase and legitimate outgrowth of the investment are as absolutely hers as the original capital. If a wife owns a farm she is not required to exclude her husband from it and employ strangers exclusively, at the risk of losing her property. Where a husband and wife live together on a farm and he contributes personal labor only, such as is consistent with the common interest and the proper enjoyment of the property, the products will not belong to him or be liable for his debts. (*Primmer* v.

*Clabaugh,* 78 Ill. 94; *Bongard* v. *Core,* 82 id. 19; *Bennett* v. *Stout,* 98 id. 47.) Each case must be determined from its own facts and circumstances. If it appears that the wife has purchased property with money obtained from a source other than her husband, she will be protected in its possession and ownership. The fact that he lives in the family and does some work on the place will not enable creditors to seize it. By the statute, neither husband nor wife is entitled to recover any compensation for any labor performed or services rendered for the other, whether in the management of property or otherwise. (Hurd's Stat. 1899, chap. 68, sec. 8, p. 959.) If, however, a conveyance appears to be fraudulent and the husband is the real owner, or if an investment is for his benefit to enable him to carry on his business and to realize the profits of his skill and industry, it will be liable for his debts.

In this case, $2000 of the purchase money was still unpaid at the time of the trial. The balance of the purchase money was paid by the gift from the mother-in-law and out of a legacy from her. At the time the gift of $500 was made the mother gave two other children equal sums, and probably would have given the $500 to Andrew if she had deemed it wise or prudent or best for him or his family to do so. She had a perfect right to give it to the daughter-in-law and to bequeath her property afterwards as she saw fit, to secure a home to her daughter-in-law and her growing family. She had a lawful right to determine to assist the wife, and doing so did not render the farm subject to the debts of Andrew. The improvements on the farm have been made and the stock has accumulated from the products of the farm. It is true that Andrew Williams has worked there, but the evidence shows that his habits were bad and that he accumulated personal debts during the time. There were two whisky bills which were scheduled among his liabilities as a bankrupt. He had whatever money he needed

and his support and clothing, and no one can say from the evidence that his services were worth any more. The evidence does not show that the stock or property is the result of his skill, industry or ability, but that it is the legitimate outgrowth of the investment and of the farm.

We think the circuit court was right, and the judgment is affirmed.                                *Judgment affirmed.*