DeWITT TAYLOR KENNARD, Appellee, *vs.* RICHARD CUR-
RAN *et al.*—(ISABELLA CURRAN, Appellant.)

*Opinion filed February 19, 1909—Rehearing denied April 7, 1909.*

1. CREDITORS' BILLS—*what allegation is sufficient basis for find-
ing that debtor was equitable owner of property.* An allegation in
a creditor's bill that property is held by the co-defendants to the
bill subject to some equity of redemption or other valuable interest
of the debtor is sufficient to support a finding that the debtor was
the equitable owner of such property.

2. SAME—*as against creditors the proof must show good faith
in conveyances from husband to wife.* While it is true that prop-
erty belonging to the wife cannot be taken for the debts of the
husband, and that a wife, acting in good faith, may make her hus-
band her agent without imperiling her property, yet, as against
creditors of the husband, the good faith of the transactions must
be clearly and satisfactorily shown.

3. SAME—*actual insolvency at time of conveyance is not nec-
essary to render it fraudulent.* To render a voluntary conveyance
fraudulent as against the grantor's creditors it is not essential that
the grantor be actually insolvent at the time the conveyance was
made, and if he was largely indebted at that time and shortly be-
came insolvent the conveyance may be set aside.

4. SAME—*claims arising from contract are in force from date
of the agreement.* All claims which arise under a contract are in
force from the date of the agreement, and the liability arises from
that date although no demand accrues until a subsequent date.

5. SAME—*grantor's testimony that he did not intend to defraud
creditors is not conclusive.* The fact that a defendant to a cred-
itor's bill proceeding testifies that he did not intend to defraud any
creditor by his conveyance does not bind the court to believe such
statement, even though he may not be contradicted by direct tes-
timony, if from the other evidence, or from the inherent improb-
ability of or contradictions in his testimony, the court is satisfied
of the falsity of his statement.

6. SAME—*when burden is upon debtor to disprove implication
of fraud.* A debtor who, when largely indebted and shortly before
becoming insolvent, makes a voluntary conveyance to his wife has
the burden of disproving the implication of fraud, as to pre-exist-
ing creditors, arising from the making of the conveyance.

7. APPEALS AND ERRORS—*when it will be presumed there was
evidence to sustain finding.* Where the certificate of evidence in

a creditor's bill proceeding does not purport to contain all the evidence, it will be presumed, on appeal, there was sufficient evidence to warrant a finding in the decree that an execution was issued and that it was returned unsatisfied.

8. SAME—*when question of parties cannot be raised on appeal.* On appeal by the wife of the debtor in a creditor's bill proceeding, the question of failure to make an alleged assignee of part of the judgment a party cannot be raised by her, where she did not ask to have such assignee made a party, and where no complaint is made that she was denied any defense she could have made had he been a party or that she was prejudiced by the assignment.

9. SAME—*chancellor is presumed not to have considered incompetent evidence.* It is presumed, on appeal, that the chancellor considered competent evidence, only; and if there is sufficient competent evidence to sustain the decree, error in admitting incompetent evidence will be regarded as harmless.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

The appellee recovered a money decree against Richard Curran for $16,720.63. An execution having been issued on the decree against the property of Curran and returned no part satisfied, appellee then filed a creditor's bill against said Richard Curran, Isabella Curran, Maurice Curran and others, charging, in substance, that Isabella Curran and the other co-defendants had property in their names and under their control in trust for said Richard Curran, or in which the said Richard Curran had some equity of redemption or other valuable interest. The answer of defendant Richard Curran denies that since August 2, 1905, (the date of said money decree,) he has put out of his hands, name or possession any property with intent to deceive, defraud, hinder or delay complainant and other creditors, and denies that the said co-defendants, except as specially stated, have property in their names or under their control in which he has any interest or that they are indebted to him. The an-

swer of Isabella Curran denies that fraudulent conveyances have been made to her and admits that she has title to certain property in controversy, but denies that she has any property, with certain admitted exceptions, belonging to her husband, said Richard Curran.

The decree finds that certain described property stands in the name of Samuel R. Hurford to secure a debt due said Hurford, amounting to $14,990.25, and that the equitable title is in Richard Curran, subject to the payment of said debt to Hurford. It further finds that certain property therein described, the title to which is now in said Isabella Curran, belongs to her husband, Richard Curran, who is the equitable owner thereof, and that as to the same appellee is entitled to the relief sought. A special commissioner was appointed by the decree, which also provided that the equity of Hurford in the property held by him, over and above his said debt, be conveyed, by quit-claim deed, to said commissioner, and that Isabella Curran and Richard Curran convey to the commissioner certain property, subject to the dower right of Isabella Curran and to the mortgages which were on record at the time of the filing of the bill of complaint, and also subject to Richard Curran's right of redemption from any sales of the property made by the commissioner. The decree further directs that the commissioners sell and out of the proceeds pay all the costs of suit, including master's fees, and with the remainder pay to the complainant so much of the amount found to be due as such remainder will pay, and if any is left after such payments it shall be paid to said Richard and Isabella Curran. On appeal by Isabella Curran to the Appellate Court the decree of the trial court was affirmed, and she, alone, has prosecuted a further appeal to this court.

As none of the other defendants in the court below are parties to this appeal it is unnecessary to set out at length the pleadings with reference to them.

EDWARD MAHER, and ROBERT F. KOLB, for appellant.

THURMAN, STAFFORD & HUME, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant contends that the allegations and proof do not correspond, in that the decree finds that Isabella Curran holds title to said property of which Richard Curran is the equitable owner, while the charge in the bill is that she holds it in trust for him. The bill not only alleges that the property is held in trust by Isabella Curran and others, but has the alternative allegation that said property is held by said co-defendants subject to some equity of redemption or other valuable interest of said Richard Curran. Clearly, this latter allegation is sufficient upon which to base the finding in the decree that said Richard Curran is the equitable owner of said property. The chief contention of the appellant, however, is, that the evidence does not justify the finding that while Isabella Curran holds the real estate in question in her name her husband is the equitable owner thereof.

The evidence is very voluminous, and it is impossible within the proper limits of this opinion to set out more than its general features. At the time of taking the evidence Isabella and Richard Curran had been married and lived together continually some fifteen years. He was a contractor and builder and paid close attention to his work, being, according to the evidence, early and late on his buildings in all conditions of weather. It appears from the evidence that he was familiar with the construction and supervision of buildings, and had a good knowledge of real estate values and prices of building material and the general operation and management of buildings in Chicago. October 10, 1898, the appellee and Richard Curran entered into a contract, which was to expire May 1, 1900, in which it was mutually agreed that Curran was to furnish all lands

and capital for the necessary carrying on of speculative
building during the terms of the agreement, and that ap-
pellee was to design, construct and supervise said building
in his capacity of architect, receiving as his share a certain
proportion of the profits. The money decree against Rich-
ard Curran in favor of the appellee was based upon the
settlement of accounts between them under said contract.
Apparently, from the evidence in this record, Richard Cur-
ran was engaged in the construction and building business
from the time of his marriage up to the time of these pro-
ceedings, in 1905. The testimony of both husband and
wife is to the effect that she never had any property in her
own name except that given her by her husband. Appel-
lant herself had no definite information as to the properties
in question,—when they were purchased, how much was
paid for them and whether in cash or by trade, how long
she had owned them, or any of the details with reference
to their management and control. These properties were
all purchased by Curran, although they both testified he
was acting as her agent in all of the transactions. As we
understand the record, as to most, if not all, of these prem-
ises the buildings thereon were erected by the husband,
Richard Curran. Her testimony as to how she obtained
the money that went into them is very indefinite. She does
testify, however, that it was given to her by her husband
before the Kennard contract. Three pieces of property
were specifically set forth in her answer as being in her
name but as belonging to her husband. She knew no more
of these than she did about the others. Curran's testimony
on this subject, while somewhat more specific, is still very
indefinite as to details. He stated that the Kimbark avenue
property, where they lived for some time, was purchased
largely with money belonging to his wife, which he had
given to her some time before it was purchased,—just how
long he was unable to state. The amount he claimed he
had given her before this was some $9000 or $10,000. He

did not know how she had kept this money or how she had used it before she gave it to him to purchase the Kimbark avenue property and erect the building thereon. He admits that he put several thousand dollars of his own into the Kimbark avenue home, as his wife did not have enough to complete it. We find no definite date in the record as to when the Kimbark avenue property was purchased, but Curran testifies that the house was built and completed after appellee had started the suit against him under this contract. The record does not show the date when the suit was started, but as it was based on the contract entered into in October, 1898, it was after that date,—apparently after trouble had grown up between them, which seems to have started in May, 1899, about the time the contract was filed for record by the appellee. All of the property that is now standing in the name of the wife appears to have been deeded to her after the contract between appellee and Richard Curran was executed. Some of these properties were first in the name of Maurice Curran, a brother of Richard Curran, and afterwards deeded by him, apparently without consideration, to Isabella Curran. Certain properties were also deeded to Isabella Curran under similar circumstances through W. C. Hill, clerk of Richard Curran. Considerable of this property was deeded to Isabella Curran before the Kimbark avenue homestead was sold. Appellant and her husband claim that the Kimbark avenue property was traded, sold and re-sold and the proceeds invested again and again. The cash that was used in these buildings was generally kept in Richard Curran's bank account. He kept no books with his wife or for her, and she kept none. Apparently she kept no bank account. When the day of settlement would come he testifies he would go to his wife and say, "So much of this is yours and so much is mine; here is yours." No written memorandum of any kind, no entry in any books or Curran's bank account, tended to show that his wife, appellant here, had any interest whatever in any

of the property in question so handled by him as his own. He made the contracts, handled the deeds, purchased the material, employed the men, supervised the work and did everything with reference to the various buildings on these properties, the same as if they were his own, usually without consulting his wife and without her knowledge.

While it is true that if property belongs to the wife it cannot be taken for the debts of the husband, and that the wife, acting in good faith, may make her husband her agent without imperiling her property, (*Alsdurf* v. *Williams,* 196 Ill. 244,) yet it is also true that the good faith of such transactions should be clearly and satisfactorily shown. *Vietor* v. *Swisky,* 200 Ill. 257; *Hughes* v. *Noyes,* 171 id. 575.

Appellant contends that the decree cannot be sustained because there is no proof that Curran was insolvent at the time of the conveyances to his wife. Actual insolvency is not necessary in order to render a voluntary conveyance void. If a person largely indebted makes a voluntary conveyance and shortly after becomes insolvent such conveyance will be held fraudulent. (*Hauk* v. *VanIngen,* 196 Ill. 20.) There may be expressions in certain decisions which lend countenance to the idea that a voluntary conveyance will not be invalid for fraud if made when there is property remaining, the value of which at the time amounted to all the indebtedness, but the settled rule now is that if a person is largely indebted and makes a voluntary conveyance and shortly after becomes insolvent it is proper to set aside the conveyance as fraudulent. (*Patterson* v. *McKinney,* 97 Ill. 41; *Lowentrout* v. *Campbell,* 130 id. 503; *Dillman* v. *Nadelhoffer,* 162 id. 625.) And even subsequent creditors may set aside a conveyance as fraudulent if it was made in anticipation of becoming indebted, for the purpose of defrauding creditors. (*Morrill* v. *Kilner,* 113 Ill. 318; *Moritz* v. *Hoffman,* 35 id. 553; *Echkart* v. *Burrell Manf. Co.* 236 id. 134; Bump on Fraudulent Convey-

ances,—4th ed.—290.)  It is a general rule that all claims which arise from contract are in force from the date of the agreement.  The liability arises at that date although no demand accrues until a subsequent date.  (*Wooldridge* v. *Gage,* 68 Ill. 157.)  As we have stated, these properties were all deeded to appellant after the signing of the contract between appellee and Richard Curran.  Curran himself testifies that after the contract between him and the appellee was recorded lawyers made objections to the transfer of titles and he put the property in the name of other people; that his intention was "only for an easy manner of transferring them afterwards if I should sell them.  Some of these properties I lost altogether through the recording of that contract, through foreclosure.  I never in my life have tried to hinder any living man from collecting any debt against me.  I put various properties in the name of Maurice Curran and Isabella Curran.  There might have been other persons, but I don't remember just now.  I think I had a piece in Dan Duffy's name.  Maurice Curran was my brother, Isabella Curran my wife and W. C. Hill an employee."  The fact that he stated he did not intend to defraud creditors, even though he may not be contradicted by any direct testimony, did not bind the court to believe him, if from the other evidence or from the inherent improbability or contradictions in the testimony the court was satisfied of the falsity of the statements.  (*Larson* v. *Glos,* 235 Ill. 584; *Podolski* v. *Stone,* 186 id. 540.)  Intent to defraud creditors by the conveyance of property may be ascertained by inference, from the circumstances surrounding the transactions.  *Hughes* v. *Noyes, supra; Higgins* v. *Higgins,* 219 Ill. 146.

Counsel for appellant admit that Richard Curran was insolvent at the time the decree was entered in this cause, but contend that the proof does not show that he was insolvent at the time the execution in question was returned no part satisfied.  The conveyance in question to the wife

having been made at the direction of the husband, voluntarily, and he having become insolvent, the burden of proof devolved on him to disprove the implication of fraud as to pre-existing creditors, arising from the making of such conveyance. (*Dillman* v. *Nadelhoffer, supra.*) The husband's testimony that he gave his wife $9000 or $10,000 previous to entering into the building contract with appellee, which she kept, and that it was invested in the Kimbark avenue property, with no showing of how she kept it or how she used it, and that she returned this money to him to put into that property several years later, is most improbable when viewed in the light of the fact that he claims to have attended to all her business matters for her, with very little, if any, consultation and independent of her judgment; that her time was fully occupied, as contended by her counsel, "with her home duties." Even if it be conceded that a large part of the money that was used in the purchase of the lot and erection of the building on the Kimbark avenue property was given her by her husband before the signing of the contract by the appellee and Curran, still the evidence fails to show in any satisfactory manner how the proceeds of the Kimbark avenue property have been used. The evidence shows that some of these properties were first conveyed to other parties than the wife and then conveyed to her, but that these other parties had no interest in the real estate and that it was put in their names and that of the wife to avoid the claims of appellee.

The appellant further contends that there was no legal proof of a writ of execution and its return *nulla bona.* The certificate of evidence found in the record does not state that the evidence presented to this court was all the evidence presented to and heard by the court upon the hearing below. The record here signed by the clerk certifies only that he has set out a true and perfect copy according to *præcipe.* The decree entered in the lower court on October 25, 1905, states, among other things, that appellee ob-

tained a judgment August 2, 1905, against Richard Curran; "that no part of such judgment has been paid; that an execution has been issued against said defendant and demand made, and said judgment has been returned unsatisfied," etc. As the certificate of evidence does not purport to preserve all the evidence heard by the trial court it must be presumed that there was sufficient evidence to warrant and sustain this finding. (*Allen* v. *Henn*, 197 Ill. 486; *Allen* v. *LeMoyne*, 102 id. 25.) It may be added that the evidence in this record is sufficient to sustain the finding of the decree as to the issuance of the execution and its return *nulla bona.*

Appellant further contends that the court refused to allow appellee, Kennard, to answer certain questions which, if answered, would have shown that the money decree in his favor against Richard Curran, entered August 2, 1905, had been, in part, assigned to John C. McFarland, and contends that said McFarland should have been made a party to this creditor's bill. We think that appellee, in substance, answered all of these questions and that his answers showed that McFarland had no legal or equitable interest in the judgment in question. But even if he did have an interest, appellant is in no condition to take advantage of that fact. No complaint is made that any defense was denied her that she could have had if McFarland were a party, or that she has been placed in any worse position by the assignment of the judgment, or any part of it, to McFarland. She did not ask to have McFarland made a party in the trial court, and failing to do so she cannot raise the question now. *Atkinson* v. *Foster*, 134 Ill. 472.

It is further contended that so much incompetent testimony was admitted that the decree should be reversed for this reason. We cannot concede the claim of appellant that this case should be an exception to the general rule. We see no reason why that general rule should not apply here, namely, that in the absence of any showing to the contrary

the presumption is that the chancellor acted only upon competent testimony, and even though there be incompetent testimony in the record, if it contains sufficient competent testimony to sustain the decree the error in admitting the incompetent testimony may be regarded as harmless. *Oswald* v. *Nehls,* 233 Ill. 438; *Champion* v. *McCarthy,* 228 id. 87.

We are of opinion that the weight of the testimony in this record tends to show that the conveyances to appellant were made with the intention of conveying to her the legal title, only, of such property, while the real ownership remained in the husband. The judgment of the Appellate Court will therefore be affirmed.    *Judgment affirmed.*