SAMUEL H. MORRILL *et al.*

*v.*

MARY KILNER.

*Filed at Springfield March 30, 1885.*

1. FRAUDULENT CONVEYANCE—*generally.* A debtor in failing circumstances is only allowed to transfer his property by making a general assignment of it for the benefit of creditors.

2. SAME—*voluntary conveyance by an insolvent debtor—subsequent creditors.* A conveyance of real estate without consideration, or for a mere nominal one, by a party who is at the time largely indebted and insolvent, will be regarded as fraudulent and void, even as against subsequent creditors.

3. SAME—*of a conveyance made in anticipation of insolvency.* A person, about a week after contracting for a loan of money, conveyed certain lots owned by him to his mother, without consideration, and received the money upon the loan the next day after the execution and delivery of his deed, and the deed was not recorded until eleven months after its execution, and only a day or two before the grantor made a general assignment. It was *held,* that from these facts it could be fairly inferred that the conveyance to the mother was made in anticipation of the grantor becoming indebted, and that the same was fraudulent as to the party loaning him the money.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. C. B. SMITH, Judge, presiding.

Mr. ANTHONY THORNTON, for the plaintiffs in error:

The ordinary consideration of five dollars, or even ten dollars, when the property is worth a great deal more, is merely nominal, and a deed upon such consideration is deemed voluntary. *Ward* v. *Trotter,* 3 Mon. 1; *McKinley* v. *Combs,* id. 105; *Cains* v. *Jones,* 5 Greg. 250.

The facts indicate that the mother of the grantor was a mere trustee, and that the conveyance was made for the benefit of the grantor. This makes the deed void both as to then existing and subsequent creditors. *Jones* v. *King,* 86 Ill. 229.

The concealment of the transfer for nearly two years is a badge of fraud.   *Hungerford* v. *Earle,* 2 Vern. 261; *Hildreth* v. *Sands,* 2 Johns. Ch. 48; *Salmon* v. *Burnett,* 8 Wheat. 229.

A deed made in anticipation of becoming indebted, for the purpose of defrauding creditors, and without consideration, is void against subsequent creditors.   *Moriarty* v. *Hoffman,* 35 Ill. 558.

That the conveyance was made with the view of becoming indebted, may be inferred from the fact that the money was borrowed on the next day.   *Ridgeway* v. *Underwood,* 4 Washb. C. C. 137; Am. Leading Cases, 71.

Mr. D. T. McINTYRE, for the defendant in error, contended, from the evidence, that Walter Kilner, in purchasing the lots, acted merely as the agent of his aged parents, and that as the grantor was not the owner, he was not selling to his mother, and no consideration was necessary.

The conveyance being such as a court of equity would have compelled, can not be held fraudulent.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill brought by Mary Kilner to enjoin Samuel H. Morrill, one of the plaintiffs in error, from selling certain lots on a judgment in his favor against Walter B. Kilner and one Corbin, upon the ground that the property belonged to her, and that Walter B. Kilner had no title or interest whatever in the property.   Morrill put in an answer to the bill, and also filed a cross-bill, in which he set up that Walter B. Kilner was the owner of the property, and that the conveyance which he had made to the complainant, his mother, was without consideration, and made with intent to defraud his creditors.   On the hearing on the pleadings and evidence, the court rendered a decree in favor of the complainant, as prayed for in the bill, to reverse which Morrill and Corbin sued out this writ of error.

The property involved consists of four lots in the town of Sullivan, Moultrie county. Two of the lots were purchased on the 26th day of January, 1870, and deeded to Walter B. Kilner. The other two were bought on the 13th of January, 1871, and conveyed to the same party. The legal title to the lots remained in Walter B. Kilner until the 21st day of January, 1874, when, by deed of that date, he conveyed them to his mother, Mary Kilner. At the time this conveyance was made, Walter B. Kilner was indebted to different persons from $2500 to $3000, and remained so indebted until the last of December, 1875, when he made an assignment.

It is claimed by the complainant in the bill, that the property was purchased originally for her, and the purchase money was paid by her husband, George Kilner. There is some evidence in the record tending to sustain this view. Walter B. Kilner testified that the property was bought for the complainant, and his father, George Kilner, paid the purchase money. But the decided weight of the evidence seems to indicate that Walter B. Kilner made the purchase on his own account. When the purchase was made the deeds were taken to him. Mr. Smyser sold the property to Kilner. From his evidence it appears that he had sold lots 1 and 2 to one Ambrose, for $391.88. He being unable to pay the purchase money, gave up the lots to Smyser, and Walter B. Kilner then assumed the payment of the purchase money Ambrose had agreed to pay, and took the lots. The other two lots, 3 and 4, were sold to Kilner for $200, for which he gave his note, with interest at ten per cent. Kilner was at the time in the drug business, and according to Smyser's evidence, which was not contradicted, at least three-fourths of the $591.88 agreed to be paid for the property was paid by Walter B. Kilner out of his store. The remaining fourth Walter B. Kilner paid by turning out a bill for medical services, which George Kilner held against Smyser. From this evidence it not only appears that Walter B. Kilner bought the property in his own name,

but he also used his own means in paying for the property. How he settled with his father for the medical bill he turned out to Smyser as a part payment on the property, does not appear, nor is that fact material. He procured the account from his father, and used it as his own property in making the payment. It therefore seems plain, from the evidence, that Walter B. Kilner bought and paid for the property. After the purchase, it seems, from the evidence, that the property was known and recognized as belonging to Walter B. Kilner. He paid all the taxes on the property in his own name, except for one year. After purchasing the property, he made improvements thereon, amounting to some $600. These improvements were in the main paid for by him out of his own money. From these facts, and from other evidence in the record, the only reasonable conclusion to be reached is, that Walter B. Kilner purchased and owned the property.

The only remaining inquiry is, whether the conveyance to Mary Kilner, his mother, was without consideration, and made with intent to defraud creditors. As to the consideration, it is not claimed that any sum whatever was paid by the grantee, or by any person for her, for or on account of the conveyance. If, however, Walter B. Kilner had been free from all indebtedness, and saw proper to convey the property to his mother for a nominal consideration, or as a gift, the conveyance might be sustained; but such was not the case. At the time of the execution of the deed he was insolvent. Where a deed is made without consideration, or for a mere nominal consideration, and the grantor is at the time largely indebted, the transaction will be regarded as fraudulent, and may be impeached by creditors. A debtor in failing circumstances is only allowed to transfer his property by making a general assignment of it for the benefit of creditors. (*Phelps* v. *Curts*, 80 Ill. 109.) In this case the conveyance was made without consideration, when the grantor was largely indebted, and we are aware of no rule under which it can be sustained.

It may be said that the debt of plaintiffs in error was not in existence at the time the deed was executed, and for this reason they have no right to impeach the transaction. In *Moritz* v. *Hoffman*, 35 Ill. 553, it was held that a settlement upon a wife by a voluntary conveyance without consideration, the grantor being at the time solvent, can not be attacked by a subsequent creditor, and is only void against creditors existing at the time of the conveyance. But in the same case it was also held if such conveyance was made in anticipation of becoming indebted, and for the purpose of defrauding creditors, and was made without consideration, it matters not whether the grantor was insolvent or not, the conveyance would be void against such subsequent creditors. Here, the debt of plaintiffs in error was created the next day after the deed was executed. Kilner had contracted for the money the loan of which created the debt, about one week before the deed was made, but he did not actually receive the money until the day after the deed was made. We think it may be fairly inferred, from the circumstances attending the execution of the deed and the making of the debt, that the conveyance was made in anticipation of becoming indebted. Indeed, the deed conveying the property was not placed on record for over eleven months after it was executed, and only a day or two before the grantor made an assignment, the effort, to all appearances, having been made to cover up the property, and at the same time keep the fact from the knowledge of creditors.

The decree of the circuit court will be reversed, and the cause remanded.

*Decree reversed.*