540      EAMES *et al. v.* DORSETT *et al.*

HENRY F. EAMES *et al.*

*v.*

ELLEN R. DORSETT *et al.*

*Filed at Ottawa October 26, 1893.*

1. FRAUDULENT CONVEYANCES—*deed by debtor to his wife.* The law is well settled that a voluntary conveyance of property by a husband to his wife, when he is insolvent or indebted beyond his ability to pay, will be regarded as fraudulent as against existing creditors.

2. So, also, a voluntary conveyance made by a husband to his wife, if made with a view of becoming indebted, and with a fraudulent intent, may be impeached by subsequent creditors.

3. A conveyance by a husband to his wife when he is solvent, and the gift is a reasonable provision according to the state and condition. in life of the husband, will be sustained.

4. SAME—*what creditors may complain.* A voluntary conveyance by a husband to his wife, with no fraudulent intent in fact, can only be attacked by creditors in existence at the time the conveyance was made. Subsequent creditors can not inquire into the validity of the transaction.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a creditor's bill, brought August 4, 1890, by Henry F. Eames, Frank A. Hecht and Alfred Cowles, against Ellen R. Dorsett and Daniel H. Dorsett, who are husband and wife. The bill is predicated on two judgments in the circuit court of Cook county, one rendered March 2, 1890, in favor of George W. Clother, against Daniel H. Dorsett, for the sum of $1582.50 and costs. This judgment was appealed by defendants therein to the Appellate Court, and, after affirmance therein, the order of affirmance and a procedendo were filed in the circuit court on the 29th day of July, 1890, and thereupon execution issued and was properly returned. The second judgment is for $4140.44, entered May 31, 1890, by

confession, in favor of Benjamin F. Gump, against Daniel H. Dorsett. The complainants are the assignees of both judgments. The first judgment was assigned to complainants on the 29th day of July, 1890, and the second judgment on the 31st day of July, 1890. By the sale of certain bonds and stocks pledged as collateral security for the payment of the judgment note on which the Gump judgment was entered, the Gump judgment has been reduced by the sum of $1576.

It was, among other things, alleged in the bill, that in the month of August, 1885, defendant Daniel H. Dorsett purchased certain real estate in Cook county, Illinois, described as follows: Lot 2 and the west half of lot 3, in O. W. Kettlestrings' addition to Harlem, in section 7, township 39, north, range 13, east of the third principal meridian, and, with the intent to hinder, delay and defraud his creditors, caused said real estate to be conveyed to his wife, Ellen R. Dorsett; that said lot 2 was conveyed to Ellen R. Dorsett by Samuel E. Pebbles and wife, by warranty deed dated August 3, 1885, and filed for record in the recorder's office of said county September 10, 1885, for the consideration therein expressed of $4000; that the west half of lot 3 was conveyed to Ellen R. Dorsett by J. Willis Kettlestrings and wife, by warranty deed dated August 4, 1885, and filed for record in the recorder's office September 10, 1885, and recorded therein in book 1667 of records, on page 584, for the consideration therein expressed of $5500. It was also alleged that said real estate was purchased by Daniel H. Dorsett and paid for with his money; that the real estate was conveyed to the wife of Daniel H. Dorsett, with the intent, on his part, to hinder, delay and defraud his creditors. The bill prays that it may be adjudged that said real estate be held in trust by Ellen R. Dorsett for her husband, for the purpose and with the intent, on their part, to hinder, delay and defraud the creditors of Daniel H. Dorsett; that defendants be decreed to pay complainants' debt, and in default thereof that said real estate be

ordered sold under the direction of the court, to pay complainants' judgments, etc.

Ellen R. Dorsett put in an answer to the bill, in which she states, that in the month of August, 1885, the lots described in the bill were purchased by herself and her husband, Daniel H. Dorsett, and the same conveyed to her by deeds executed by said Pebbles and wife and Kettlestrings and wife, on or about the dates named in said bill, and for the considerations therein named, but denies that either of said pieces of land was conveyed to her for the purpose of hindering, delaying or defrauding the creditors of said Daniel H. Dorsett, or with any other fraudulent intent or purpose, and that all the consideration money for the premises was paid in cash, except the sum of $900, which was secured by note and trust deed on said lot 2, which note and trust deed were afterwards paid and taken up by money belonging to the answering defendant, and that prior to the purchase of said premises the defendant had paid over and given to her husband between $4000 and $5000, which has never been repaid to her in any way; that a portion of the premises is now occupied by herself and family as a homestead, and has been so occupied for several years last past; that when said premises were purchased, in the year 1885, her said husband was entirely solvent and abundantly able to pay all his debts, and answering defendant believes that he is still solvent and able to pay his debts; that the judgments set up in the bill were rendered three or four years after said premises were conveyed to her, and that between the year 1885 and the recovery of said judgments her husband owned, in his own right and in his own name, large and valuable pieces of real estate situated in Cook county, besides personal property and effects. Daniel H. Dorsett failing to answer the bill, a default was taken as to him.

The complainants filed a replication to the answer, and the cause proceeded to a hearing on the pleadings and evidence,

and the court entered a decree dismissing the bill. On appeal, the decree was affirmed in the Appellate Court, and for the purpose of reviewing the judgment of that court complainants have appealed to this court.

Mr. FRANK F. REED, for the appellants:

The presumption raised by a voluntary conveyance or settlement is, that it was intended to defraud existing creditors, and when attacked the grantor must rebut this presumption by such a showing of his affairs at the time as would warrant the conveyance. *Gore* v. *Campbell,* 621 Sec. 401.

Any person who has a legal right to damages capable of judicial enforcement, is a creditor, within the meaning of the law and statutes. The time of the creation of the obligation, and not the time of obtaining the judgment, is the time considered in fixing the debt, and the purchaser of a claim succeeds to all the rights of the original holder. *Warren* v. *Williams,* 52 Me. 343; *Sutton* v. *Casey,* 58 Wis. 556; *Soden* v. *Soden,* 34 N. J. Eq. 115; *Howe* v. *Ward,* 4 Greenl. 195; Bump on Fraud. Con. 495; *Choteau* v. *Jones,* 11 Ill. 300; *Hatfield* v. *Merod,* 82 id. 113; *Thompson* v. *Thompson,* 19 Me. 244; *Carlisle* v. *Rich,* 8 N. H. 44; *Anderson* v. *Anderson,* 64 Ala. 403; *Twyne's case,* 2 Coke, 212; *Cramer* v. *Reford,* 17 N. J. Eq. 367; *Stevenson* v. *Avegley,* 87 N. Y. 332; *Pashby* v. *Mandigo,* 42 Mich. 172; *Bougard* v. *Block,* 81 Ill. 186; *Post* v. *Steiger,* 29 N. J. Eq. 558; *Bishop* v. *Redmond,* 83 Ind. 157; *Shean* v. *Shay,* 42 id. 375; *Damon* v. *Bryant,* 19 Mass. 411; *Scott* v. *Hartman,* 26 N. J. Eq. 90; *Miller* v. *Dayton,* 47 Iowa, 312; *Tyler* v. *Tyler,* 126 Ill. 525; *Stout* v. *Stout,* 77 Ind. 537; *Bank* v. *Townsend,* 114 id. 534; *Keel* v. *Larken,* 72 Ala. 493; *McVeigh* v. *Ritenour,* 40 Ohio St. 107; *Haston* v. *Castner,* 31 N. J. Eq. 704.

When the debtor, with his own means, pays for property, but has the same conveyed to a third person, the creditors may impeach the conveyance and satisfy their claims. *Gear*

v. *Schrer,* 57 Iowa, 666; *Simmons* v. *Ingram,* 60 Miss. 886;.
*Bennett* v. *Hutson,* 33 Ark. 762.

Where the conveyance is fraudulent as to existing creditors,
and the facts show that it was intended to defraud subsequent
creditors, it is void as to the latter. Indeed, the cases hold
that if fraudulent as to existing creditors it is also void as to
future ones, if at the time the grantor is deeply indebted.
*Allen* v. *Rundle,* 50 Conn. 9; *Barby* v. *Perry,* 57 Iowa, 416;
*Moritz* v. *Hoffman,* 35 Ill. 562; *Parkman* v. *Welch,* 19 Pick.
231; *Crossley* v. *Elworthy,* L. R. 12 Eq. Cases, 158; *Patterson*
·v. *McKinney,* 97 Ill. 41.

Where a wife received various sums of money as her sepa-
.rate property, and some went into the hands of her husband,
.but there was no stipulation for repayment, no interest asked
·or received, and no accounting, there is no indebtedness suf-
.ficient to make valid a conveyance of property by him to her,
.as against existing creditors. *Coale* v. *Moline Plow Co.* 134
Ill. 350; *Gordon* v. *Reynolds,* 114 id. 118.

A voluntary conveyance by a husband to a wife when the
·donor is in embarrassed financial circumstances, is fraudu-
lent as to pre-existing creditors, even though the party retains
·estate nominally in value equal to or more than equal to all
his indebtedness, when the event shows that the property re-
tained is not sufficient to discharge all his indebtedness. If
the conveyance directly tended to and did impair the rights
of creditors, and the grantor became thereafter insolvent, the
·conveyance is void. Rev. Stat. chap. 59, sec. 3; Bump on
Fraud. Con. secs. 268, 274-276; *Marmon* v. *Harwood,* 124
Ill. 104; *Emerson* v. *Bemis,* 69 id. 541; *Russell* v. *Fanning,*
·2 Bradw. 632; *Patterson* v. *McKinney,* 97 Ill. 41; *Beanes* v.
*Worthington,* 3 Md. Ch. 94; *Kehr* v. *Smith,* 20 Wall. 31; *Cock*
·v. *Oakley,* 50 Miss. 629; *Edmunds* v. *Mister,,* 58 id. 776.;
*Eddy* v. *Baldwin,* 32 Mo. 369; *Parkman* v. *Welch,* 19 Pick.
·231; *Patrick* v. *Patrick,* 77 Ill. 556; *Salmon* v. *Bennett,* 1 Am.
Lead. Cas. (4th ed.) 37, H. & W. notes.

Mr. N. M. JONES, for the appellees:

Mere relationship alone does not raise a presumption of fraud. *Schroeder* v. *Walsh,* 120 Ill. 403.

A debtor has the right to make conveyances to his wife or relatives unless he do so in fraud of the right of existing creditors. *Moritz* v. *Hoffman,* 35 Ill. 553; *Bridgford* v. *Riddell,* 55 id. 261; *Yazel* v. *Palmer,* 81 id. 82; *Faloon* v. *McIntyre,* 118 id. 292; *Jackson* v. *Minor,* 101 id. 550.

The debtor must be weighed down with debt so as to effectually impair the rights of creditors, in order to render conveyances similar to the ones in question, fraudulent. *Patterson* v. *McKinney,* 97 Ill. 41; *Bay* v. *Cook,* 31 id. 336; *Parkman* v. *Welch,* 19 Pick. 231.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The question presented by this record is, whether the conveyance to Ellen R. Dorsett, of lot 2 and the west half of lot 3, which are more particularly described in the bill, was fraudulent as against the two creditors who obtained judgment on their respective claims against Daniel H. Dorsett. The law is well settled that a voluntary conveyance of property by a husband to his wife, where the husband is insolvent or indebted beyond his ability to pay, will be regarded as fraudulent as against existing creditors. (*Moritz* v. *Hoffman,* 35 Ill. 553; *Patterson* v. *McKinney,* 97 id. 41; *Marmon* v. *Harwood,* 124 id. 106.) So, also, a voluntary conveyance made by the husband to the wife, if made with a view of becoming indebted and with a fraudulent intent, may be impeached by subsequent creditors. On the other hand, a conveyance from a husband to his wife when the husband is solvent, and the gift is a reasonable provision according to the state and condition in life of the husband, will be sustained. In *Bridgford* v. *Riddell,* 55 Ill. 261, *Yazel* v. *Palmer,* 81 id. 82, and *Faloon* v. *McIntyre,* 118 id. 292, the rule is declared that a voluntary conveyance can only be attacked by creditors in existence at the time the

conveyance was made, — that subsequent creditors can not inquire into the validity of the transaction. The same doctrine is recognized in *Jackson* v. *Miner*, 101 Ill. 550.

The two deeds which the complainants seek to impeach were executed, one on August 3, 1885, and the other on the day following, and the principal question of fact before the circuit court was, whether Daniel H. Dorsett was at that time insolvent, or so heavily involved that he was not able to pay his existing liabilities.  Upon this question much evidence was introduced by the respective parties, and the testimony is somewhat contradictory.  Several witnesses called on behalf of the complainants gave it as their opinion that Dorsett was, at the time the deeds were executed, insolvent; but the facts before the court, in our judgment, when properly considered, establish the contrary.  We shall not refer to all the evidence in detail, as that is not necessary; but we shall content ourselves with alluding to a few leading facts in the case, which, in our opinion, fully sustain the decree of the circuit court and the judgment of the Appellate Court affirming the decree.

The property involved cost in the neighborhood of $12,000. About the same time this purchase was made, Dorsett purchased, in his own name, property at Oak Park which cost about the same amount.  Prior to the purchase, Ellen R. Dorsett had advanced to her husband, on different occasions, of her own money, which she had received from her father's estate, from $4000 to $5000.  She also paid an incumbrance on the property of $960.  From the fall of 1883 to the fall of 1886 Dorsett was a stockholder and principal member in the Chicago Pipe and Paving Company, and in the spring of 1885 Dorsett entered into a contract with the Chicago Sectional Electric Underground Company and Elisha Gray for the construction of a system of underground conduits in Chicago. For the purpose of completing this contract, Dorsett had arranged with the Pipe and Paving Company for the use of its factory, upon certain agreed terms.  J. R. Burdock had an

interest in this contract, with Dorsett. The contract was completed about the first day of September, and the profits realized amounted to over $60,000, the entire amount of which, except some $9000, belonged to Dorsett. During the time the work was being done under this contract, Dorsett was compelled to borrow money, and was somewhat involved until the contract was completed, but after the completion of the contract he had ample means to pay all liabilities, and had a surplus to invest in the Oak Park property of $30,000. Burdock, a witness called for complainants, testified that upon the completion of this contract, September 1, 1885, he and Dorsett, the two parties composing the firm of Dorsett & Co., were solvent, and could then pay their debts at any time.

In 1883, Dorsett commenced doing business with the Commercial National Bank in Chicago, and continued to do business with the bank for several years. Henry F. Eames was president of the bank, and in his testimony he now thinks that Dorsett was then insolvent. But in 1885 the Commercial National Bank loaned Dorsett $8000 or $10,000 on his own paper. Eames knew of no suits being brought against him from 1885 to 1887, or judgments rendered against him. He also testified that all indebtedness to the bank was taken up in 1887, and in 1886 he gave Dorsett the following letter of endorsement:

"CHICAGO, *April 8, 1886.*

"*To whom it may concern*—I have known Mr. D. H. Dorsett for many years. He has been a pleasant customer of this bank also for several years. Our business relations have been entirely satisfactory. I believe Mr. Dorsett is entirely responsible for any agreement he may make. I consider him a careful and discreet man, and I believe that he has been quite prosperous, and is making money in his present business.

H. F. EAMES, *Pres.*"

Frank A. Hecht, another of the complainants, on May 26, 1886, as a member of the firm of Chas. Kaestner & Co., wrote

the following to a New York house concerning the standing of Dorsett & Co. :

"In reply to your favor of the 24th, say we have been building machinery for Dorsett & Co. during past three years, given them credit from $1000 to $8000, and never had any difficulty with them, and our banker, to whom we discounted their paper, said it was always paid before due. Consider them good and shrewd business men, and not likely to undertake anything they can not swing. Our contracts will amount to $6000, for which we expect to carry them four or five months, or until such time when their new factory begins to turn out conduits. We know there is a large profit in their business, and do not hesitate to give them credit for any amount they desire. While we do not care to guarantee their account with you, we think it will be a good one. Dorsett's backing here is of the very best, as near as we can learn, consisting of one of our largest bankers. Have never asked for a statement, and can give no idea, but consider them good for all they want in our line. Treat this as confidential."

Dorsett testified that in 1885 no creditors were pressing him for payment; that he "was solvent three or four times over," but he had to borrow money for his New York enterprise, but had something to show for it. He further testified that on the 13th of May, 1885, his account with the Commercial National Bank showed a balance in his favor of $3880.77, and his bank book, put in evidence, showed that during July, August and September, 1885, there was deposited to his credit $75,859.45. He testified, also, that between June and September, 1885, he deposited at Christoph's bank, on his private account, about $50,000, and this is not contradicted by any other evidence we find in the record.

During the summer and fall of 1885 Dorsett paid out for the Oak Park property over $30,000. One-half of the property was placed in the name of his wife, and the other half in his own name. The property purchased in his own name,

worth from $12,000 to $15,000, stood of record in his name, clear of incumbrance, from 1885 to 1887,—a period of two years. It might happen that an insolvent person would hold for two years unincumbered property of the value of $12,000 in his own name, within a short distance of the center of the city of Chicago, and no creditor attempt to reach the property. But occurrences of that kind, it must be conceded, are scarce. It also appears from the record that in 1887 Dorsett and these complainants organized a new company, and in the organization and distribution of stock the entire indebtedness of Dorsett was liquidated.

It is clear from the record that Daniel H. Dorsett was a speculator. He was largely engaged in contracts for putting in conduits and sewers in New York, Brooklyn, Minneapolis, Detroit, Chicago, and other cities. His business required the use of large sums of money to enable him to carry out his contracts. But while he was a large borrower, the testimony all shows that he had excellent credit, and furnished men of fine financial standing as endorsers. Moreover, in 1885, 1886 and 1887 he owned property, and by resorting to the courts no reason is perceived why a debt could not, at any time, have been collected from him. John Syme, a witness for appellee, who was book-keeper for the National Subway Company, and knew Dorsett's financial standing, testified: "He always had financial resources, as far as I know, and I think he was during those years (1884 to 1889) perfectly solvent." There is other testimony of a like character in the record, but it will not be necessary to refer to it.

The circuit court and the Appellate Court have both found that the evidence is insufficient to show that Dorsett was, at the time the deeds were executed, insolvent, and we are not inclined, after a full consideration of all the evidence, to hold that those courts have so far misjudged the evidence as to authorize a reversal of the judgment. The judgment will therefore be affirmed. *Judgment affirmed.*