Duncan B. Rogers v. Jesse Dimon et al.

1. ASSIGNMENT—*Of Judgment, Transfers Equitable Rights to Assignee.*—The assignment of a judgment in writing. by a receiver who had power to dispose of the assets of a bank, vests in the assignee title to the judgment, and the right to such equitable relief as the bank or the receiver could have had.

2. CREDITOR'S BILL—*Right to File Accrues After One Execution Has Been Issued and Returned Unsatisfied.*—Where one execution has been issued upon a judgment and returned unsatisfied, the right to file a creditor's bill accrues, if there is property to be reached thereby.

3. DEBTOR AND CREDITOR—*Debtor May Give Property to Husband if Not for the Purpose of Defrauding Creditors.*—A creditor without a lien on his debtor's property can not complain that his debtor is giving away property to her husband unless such creditor can establish the fact that she has not retained enough to satisfy existing debts. Such grantor must make himself insolvent by such gifts or conveyances and fraud must be charged and proved in order to impeach them.

Creditor's Bill.— Appeal from the Circuit Court of Winnebago County; the Hon. CHARLES E. FULLER, Judge presiding. Heard in this court at the October term, 1902. Reversed. Opinion filed January 27, 1903.

ROBERT M. BRAND, attorney for appellant.

FISHER & NORTH, attorneys for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a creditor's bill brought by appellees against appellant, Duncan B. Rogers, and others, in the Circuit Court of Winnebago County. The bill as amended charges that on September 14, 1892, Minerva Churchill Rogers became indebted to the Second National Bank of Rockford in the sum of $2,500; that upon December 9, 1896, said bank recovered a judgment in the Circuit Court of Ogle County against her for the sum of $2,592.83; that on January 22, 1897, the bank caused an execution to be issued on said judgment directed to the sheriff of the county of Ogle, in which county said Minerva Churchill Rogers then resided; that said sheriff thereafter, on October 13, 1897, returned said writ unsatisfied; that on October 14, 1896, said bank failed, and on November 15th following, H. H. Waldo was duly appointed receiver thereof; that on September 20, 1900, said receiver sold and assigned said judgment to appellees; that said judgment is still unsatisfied and there is due appellees upon the same the sum of $2,592.83, together with costs and interest; that at the time of the recovery of said judgment said Minerva Churchill Rogers was the owner of large property interests, mortgages, claims and choses in action; that at the time of the filing of said bill Duncan B. Rogers, the husband of Minerva Churchill Rogers, had in his possession certain personal property, choses in action and real estate, in which she was beneficially interested, or that he held the same in trust for her; that he held the legal title to certain lots in the city of Rockford in which she had an equitable interest, and which should be subjected to the payment of appellees' claims; that William F. Huffman and Sarah Fisher were in possession of said premises or some part thereof.

The bill prayed for a full and complete discovery and that said Minerva Churchill Rogers should be decreed to pay appellees the amount of such judgment, costs and interest; that the deeds conveying said lots in the city of Rockford to said Duncan B. Rogers be set aside as a fraud upon the rights of appellees, and that said premises be sold under the direction of the court to satisfy appellees' debt.

An order of default was entered against all the defendants except Duncan B. Rogers, who by his answer as amended, denies that he has knowledge of any property, real or personal, in which Minerva Churchill Rogers had any interest, except certain notes and certificates of stock mentioned therein, which he alleges to be worthless and of no value; avers that he is the absolute owner of the premises described in the bill as located in the city of Rockford and paid full value for the same; denies that he holds any property, real or personal, in which Minerva Churchill Rogers is interested; denies that Waldo as receiver sold and assigned said judgment to appellees or that the same is now legally owned and held by them; denies that appellees are entitled to the relief sought for.

The cause was referred to the master in chancery, who found the facts substantially as alleged in the bill, and reported as his conclusion, that a decree should be entered granting appellees the relief prayed for as against the premises described as lots 1, 2, 3, 4 and 11 in Park Ridge addition to the city of Rockford, to which Duncan B. Rogers held the legal title, but which the master found in equity belonged to the defendant Minerva Churchill Rogers. The master also found, as a matter of law, that appellees had exhausted their remedy at law. Upon final hearing the court found that the real estate above described was in equity the property of Minerva Churchill Rogers, and that appellees were entitled to a lien upon the same for the amount due upon said judgment, amounting to $3,268.26 and the costs of this suit, and it was decreed that appellant, Duncan B. Rogers, or Minerva Churchill Rogers, pay said sum within thirty days from the date of the decree, and in case of their failure so to do that said premises be sold to satisfy said debt and costs.

It appeared from the evidence taken before the master that on September 14, 1892, Minerva Churchill Rogers, together with one W. J. Plow, Jr., signed a note for $2,000 to L. Judson West, and that this note was afterward assigned by West with other notes to the Second National

Bank of Rockford as collateral security for a note of larger amount given by him to the bank. West did not pay his note and on December 9, 1896, the bank recovered a judgment against Mrs. Rogers on the collateral note above mentioned. Some time after the receiver took possession of the assets of the bank, he sold this judgment, amounting to $2,592.83, to appellees, with various other securities, for the sum of $100. The premises in question here, and against which the court found appellees were entitled to a lien for the payment of the debt claimed to be due them, were formerly owned by L. Judson West. They were mortgaged to Frank T. Bertrand for $4,000 and Mrs. Rogers had a second mortgage upon them for a like amount. It further appeared that in 1895, the exact date not being shown by the record, Duncan B. Rogers paid off the mortgage to Bertrand and the latter made him a deed for the premises. Mrs. Rogers about the same time, as nearly as can be ascertained from the record, satisfied her mortgage upon the premises. It was claimed by appellees and found by the master and court that the Bertrand mortgage was paid with moneys belonging in equity, so far as appellees were concerned, to Mrs. Rogers, and on that ground the court established the lien upon said premises in favor of appellees and ordered the sale.

Appellant raises the question whether appellees are the legal owners of the judgment in question. The judgment was assigned to appellees in writing by the receiver, who had power to dispose of the assets of the bank. That assignment vested appellees with title to the judgment and with the right to such equitable relief as the bank or the receiver could have had. Crawford v. Logan, 97 Ill. 396.

Appellant insists also that appellees should have taken out another execution after buying the judgment before filing a creditor's bill. This, however, was not necessary. One execution having been issued upon the judgment and having been returned unsatisfied, the right to file a creditor's bill accrued if there was property to be reached thereby. Gleason v. Gage, 7 Paige Ch. 121; Corning v. Stebbins, 1 Barbour Ch. 589.

It is to be observed, however, that the bill does not allege nor does the decree find that Mrs. Rogers was insolvent at the time her husband obtained title to the premises in question, nor at the time she released her mortgage upon the same. Nor do the proofs, which are very indefinite upon the subject, show satisfactorily that she was insolvent at such time. It does appear from the proofs that at the time Mrs. Rogers executed the note with Plow to West she was possessed of considerable property, largely in excess of the amount of the note, and the bill alleges that at the time the judgment was obtained by the bank against Mrs. Rogers she "was the owner of large property interests, mortgages, claims and choses in action." The judgment, however, was not obtained against her until in December of the year following the date of the conveyance to appellant, and the execution was not returned unsatisfied until October 13, 1897. It is not to be denied that Mrs. Rogers had a legal right both to furnish her husband with the money to pay off the Bertrand mortgage and to release her own mortgage upon the premises in question, if such action was not taken by her for the purpose of defrauding her creditors and if she retained a sufficient amount to satisfy their claim. Eames v. Dorsett, 147 Ill. 540; Bridgford v. Riddell, 55 Ill. 261; Nichols v. Wallace, 31 Ill. App. 408.

In Moritz v. Hoffman, 35 Ill. 553, it is said :

"No creditor without a lien has any right to complain that his debtor is giving away property to his wife or children unless such creditor can establish the fact that he has not retained enough to satisfy existing debts. Such grantor must make himself insolvent by such gifts or conveyances, and to impeach them, fraud must be charged and proved."

In the case of Bittinger v. Kasten, 111 Ill. 260, which was a creditor's bill to subject certain real estate vested in Fredericka Kasten to the payment of a judgment against her husband, Carl Kasten, it was said by the court :

"In this case the bill alleges the liability of Carl Kasten to complainant, as surety on an appeal bond, at the time of making the provision in favor of his wife, but does not

charge that he was insolvent, or that such provision or gift rendered him insolvent or unable to meet all his legal obligations, or even that he owed any other persons. In the absence of an allegation to that effect sustained by proof, it can not be presumed that any other debts of Carl Kasten then existed. * * * Here, there is an entire want of evidence on the part of complainants to establish the fact that (Kasten) was insolvent when he executed the deed."

We are of opinion that the proofs failed to satisfactorily show that the transactions complained of were in fraud of the creditors of Mrs. Rogers; and as the bill failed to allege, the evidence to show or the decree to find that she was insolvent at the time such transactions took place, the decree should not be permitted to stand, and it is accordingly reversed.