## Anton Noth, Appellee, v. The Fidelity Mutual Life Insurance Company of Philadelphia, Pennsylvania, Appellant.

1. CONTRACTS, § 190*—*when contract should be construed independently of other papers.* Where papers are executed at different times from the making of a contract and are not directly connected with it, and no ambiguity exists in the contract, it is to be construed independently of such writings and will not be allowed to affect the terms or validity of the contract.

2. INSURANCE—*when certificate of loan should be construed with policy in determining amount due on policy.* Where, upon the change of an insurance company from the assessment plan to the level premium plan, the policy of a member which had run 10 years was exchanged for a 20-year level premium policy and credit given for 10 years thereon, and it was claimed that a certificate for loan which was attached to the application was executed at the same time as the application, and the amount of such purported loan was the amount of the reserve liability charged against insured, without which charge the policy could not have been lawfully issued, and which loan was to be deducted upon payment of the policy, the certificate of loan should be construed in connection with the policy in determining the amount due on the policy at maturity,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

even though the certificate and application were not executed on the same day, especially where the entire transaction was not closed until delivery of the policy and payment of the premium.

3. FRAUD, § 20*—*when statement of insurance agent constitutes mere expression of opinion.* The statement of an insurance agent to a policyholder in the company at the time of a change of a policy of the assessment kind to the level premium kind, that the old policy, being an assessment policy, was not worth anything, is a mere expression of opinion and not fraud vitiating the new contract of insurance.

4. CONTRACTS, § 263*—*rescission of contract in part.* A party will not be permitted to affirm a contract in part and rescind as to the residue.

Appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded. Opinion filed April 5, 1918. Rehearing denied June 22, 1918.

JONES, HOCKER, SULLIVAN & ANGERT and WARNOCK, WILLIAMSON & BURROUGHS, for appellant; GEORGE H. WILSON, of counsel.

BURTON & BURTON and ANDERSON, GILBERT & HAYDEN, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The appellee recovered a judgment in the trial court for $1,954.43, which appellant claims is not sustained by the evidence and is contrary to the law in the case.

It appears from this record that on about the 10th day of September, 1897, The Fidelity Mutual Life Insurance Association of Philadelphia issued to appellee a certain policy of insurance for the sum of $2,000, payable upon his death to his wife, Anna Noth. The insurance company at that time was what is known as an assessment company and the policy issued was an assessment policy. Subsequently the Fidelity Mutual Life Association changed its method of doing business

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

from that of an assessment company to that of a level premium, or old-line company so called, and the name of the company was changed to the Fidelity Mutual Life Insurance Company. On or about July 20, 1906, and after appellee had held the policy first issued to him for nearly 10 years, during which time he had made all the payments necessary to keep the said policy in force, an agent of the appellant proposed to appellee to change his policy from that of an assessment under the old company to that of an old-line policy under the new company. The evidence with reference to what occurred at the time of the change of policies is very meager and indefinite but it does appear from the testimony of the appellee that the agent said to him: "Your first policy is due and you are not dead, you are alive. We can give you nothing. We can fix you another policy, this old policy ten years and another policy ten years and make a paid up policy on that, that is the only way." And appellee then says that upon this representation he surrendered the old policy and took out the new policy and agreed to pay an annual premium upon the new policy of $138.62.

It further appears from the evidence that the appellee was of the age of 50 years at the time he received his first policy and of the age of 60 years at the time of receiving the second policy. At the time he made application for the second policy he also signed a certificate of loan for $972, which by the said certificate it was agreed that the said loan with interest should be deducted from the amount due upon the policy at the time of its payment. The policy received was upon the 20-year premium plan with assessments based upon the 20-year rate, but appellee was given credit so that his assessments were to be only ten in number, or one-half that usually given upon such policies to the assured. The certificate of loan was attached to the application and in fact was upon the

same sheet but there was a perforation between the application and the certificate of loan so that they could be separated, and when they were sent in to the home office they were in fact separated for the purpose of placing them in their appropriate files. Upon receipt of the application and certificate of loan the policy here sued upon was issued which provided for certain accumulations and distribution of profits, and provided for what they called a guaranteed addition, that is, that every year there would be an addition to the face of the policy. The policy also provided that at the expiration of the term, which would be June 10, 1916, for three options: First. The withdrawal of a guaranteed cash value of $1,554, together with profits apportioned hereto; or, second, the conversion of the entire cash value into a life annuity; or, third, the withdrawal of profits in cash and the continuation of the policy. The appellee elected to withdraw the cash value of the policy and accumulations and so notified the appellant. Upon receipt of this notice appellant made a statement of the amount due after deducting the loan above referred to, which the appellee refused to accept, and brought this suit to recover the cash value and profits, without reference to the loan. The policy also contained a provision that upon a settlement any indebtedness owing by the appellee should be deducted from the amount due under the policy.

It is insisted by counsel for appellant that as the certificate for a loan of $972 was executed at the same time of the application and forwarded to the company it constituted a part of the consideration for the issuing of a 20-year term policy at the age of 50 years to appellee, who was then of the age of 60 years, and caused it to mature in 10 years and carried with it the guaranteed addition of a 20-year term policy at an annual premium of $138.62, when the same policy for a 10-year period at the age of 60 years, which he had

attained, would have required the payment of an annual premium of $272.37.

It is claimed by appellee, however, that as the application and certificate of loan were not executed at the time the policy was issued, and the certificate of loan was not specifically mentioned in the policy when it was issued, that it was in fact no part of the contract, and that the policy should be construed without reference to this certificate of loan, and this, in our judgment, is the crucial question in this case. It is true that where papers are executed at different times from the making of the contract and are not directly connected with the contract, and no ambiguity exists, in said contract, that it is to be construed independently of such writings and such will not be allowed to affect the terms or validity of the contract. *Schneider v. Turner*, 130 Ill. 28; *Telluride Power Transmission Co. v. Crane Co.*, 208 Ill. 218. After a careful examination of this record we do not believe that the rule invoked by appellee has the effect of depriving appellant of the benefit of having the certificate of loan construed in connection with the policy issued. It is true they were not executed on the same day in point of time, but they all constituted parts of one transaction that was not closed until the delivery of the policy and the payment of the premium. The undisputed testimony is that the amount represented by this loan certificate was the reserve liability charged against the appellant upon that policy by the insurance department, and without this reserve, either in cash or in form of a note, such policy could not have been lawfully issued, and this loan had to be taken into consideration in determining whether or not the policy could issue. It is said by appellee that the certificate is not in any manner connected with the policy. We do not so understand the evidence in this case. In addition to the fact of the reduction in the annual premium that appellee was required to pay by reason

of giving him a 20-year payment policy, it appears from the policy itself that any indebtedness that he was owing the company should be deducted upon settlement, and this certificate identifies the indebtedness referred to and should by all reasonable rules be taken into consideration in determining the amount due. It also appears from the testimony of Charles G. Hodge, secretary of appellant, which is not disputed, that: "This policy was sent to Tony Noth with a copy of that certificate of loan attached"; so that it appears that the policy, copy of application and copy of certificate were all delivered to appellee as one instrument at the time this contract was closed and should, in our opinion, be construed as one contract or transaction. In commenting upon such matters as may be taken into consideration, the Supreme Court has said that the application, note and receipt given by the assured may be taken into consideration in the construction of the contract for an insurance policy. *Winnesheik Ins. Co. v. Holzgrafe*, 53 Ill. 516. The Supreme Court of the United States in passing upon this question said: "We do not see how it can make any difference where the conditions are expressed,—whether in the policy, in the note or in the receipt given for the premium, or whether on the face of the latter or on its back. The agreements of parties may be expressed in many papers, and if the connection of the papers is not apparent it may be shown by parol. * * * The receipt expressed the conditions upon which the note was received,—unmistakably expressed them. The receipt of the premium was expressed to be 'subject to the terms of the contract and the conditions on the back' of the receipt. And the assured was directed to read the notice upon the back of the receipt. The notice was as follows: 'If note be given for the payment of the premium hereon or any part thereof, and same is not paid at maturity, the said policy shall cease and determine.' It is not contended that it was

not competent for the company to make the condition. It is asserted that it did not become a part of the contract upon which the minds of the parties met,—that the minds of the parties only met upon the application, the policy and the note. We cannot assent to this view. The payment of the premium was a very essential thing, and the manner of its payment, whether in cash or by note, and provision for the payment of the note and the effect of its nonpayment, were also essential things, and necessarily must have been of mutual concern to the parties and upon which their minds must be considered as having met. * * * All of the papers, therefore, embodied the agreement of the parties. In *Knickerbocker Life Ins. Co. v. Norton,* 96 U. S. 234, 24 L. Ed. 689, the agreement was considered as 'embodied in the policy and the indorsements thereon, as well as in the notes and the receipt given therefor.' " *Iowa Life Ins. Co. v. Lewis,* 187 U. S. 335. As the appellee had not paid any part of the first 10 years' premium and necessarily no part of the reserve, it would be a discrimination against other policyholders to permit him to receive the same benefits from ten payments as they obtained from twenty. *James v. Franklin Life Ins. Co.,* 180 Ill. App. 632; *Lawton v. Fidelity Mut. Life Ins. Co.,* decided by the Ohio Court of Appeals June 7, 1916 (not yet reported).

It further appears from the testimony in this case that on the day this policy was delivered to appellee it had a value of $887.83 because of the reserve liability, and this was in addition to the value of $2,000 provided for in the face of the policy, and had appellee died at the expiration of the first year his beneficiary would have been entitled to $3,064 and at the end of the nineteenth year (or tenth year of this term) $3,712. Had he chosen to continue his policy instead of demanding a cash settlement his beneficiary would have received much more than was tendered him upon

the cash settlement. The payments with the guaranteed additions for each year were stated in the face of the policy that appellee received, and he certainly knew or should have known that in order to obtain the benefits of this guaranteed addition, even at the end of the first year, that he would have had to pay something more than the annual premium of $138.62. We believe that it was not only lawful but fair and just that the loan should be deducted in the settlement.

It is further insisted by counsel for appellee that the certificate of loan was procured by fraud and misrepresentations by the agent, and was without consideration and void. The misrepresentations claimed are that the agent stated to appellee that the old policy being an assessment policy was not worth anything and bases the falsity of this statement that at the time appellee acquired his first policy in the assessment company there was a surplus of $400,000, and that at this time, 7 years later, must have materially exceeded that sum. It may have increased or may have been decreased, or all or a portion of it may have been applied in the reduction of premiums as provided in the old policy. It is conceded that there is nothing in the record to show what did become of it. The witnesses for appellant state in their testimony that the old policy at the time of the exchange in fact had no value. The facts as disclosed by this record do not in our judgment constitute such fraud and misrepresentations as to vitiate the loan; it was after all but the expression of an opinion by the agent which would not constitute such a fraud as to vitiate the contract. *Douglass v. Littler,* 58 Ill. 342. There is nothing in this record that excused the appellee from having this certificate of loan read by the agent or some one else, if he did not understand it, but he made no such request of any one. If he had caused it to be read and there had appeared to be something in it that was not in accordance with the agreement, he certainly would

have been justified in not signing it. We do not believe that there is any merit in this contention but, if there was, it could not benefit the appellee in this action. In conformity with the views above expressed, making the certificate of loan a part of the contract, the appellee would have to abide by the whole contract as made or institute an action to rescind the whole contract and restore him to his original rights. He could not accept such provisions of the contract as were favorable and reject those unfavorable; he must accept the bitter with the sweet. A party will not be permitted to affirm a contract in part and rescind as to the residue. If he rescinds at all he must do so *in toto*. *Harzfeld v. Converse,* 105 Ill. 534.

It follows from what we have determined in this opinion that the court erred in refusing to direct a verdict for the plaintiff for the amount tendered and in modifying appellant's instructions. The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*